**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
No. 1:21-cv-422-CCE-JLW**

| | | |
|---|---|---|
| BLUE FORCE TECHNOLOGIES INC., | ) | |
| | ) | |
| Plaintiff/Counterclaim Defendant, | ) | |
| | ) | **ANSWER TO FIRST AMENDED** |
| v. | ) | **COMPLAINT AND VERIFIED** |
| | ) | **AMENDED COUNTERCLAIMS** |
| BETA TECHNOLOGIES, INC., | ) | |
| | ) | **Jury Trial Demanded** |
| Defendant/Counterclaim Plaintiff. | ) | |
| | ) | |

Pursuant to the Federal Rules of Civil Procedure, Defendant/Counterclaim Plaintiff BETA Technologies, Inc. ("BETA") pleads its Answer and affirmative defenses to Plaintiff/Counterclaim Defendant Blue Force Technologies Inc.'s ("Blue Force") First Amended Complaint (the "FAC") and pleads its Amended Counterclaims against Blue Force as follows:

## ANSWER

BETA responds to the individually numbered paragraphs in the FAC as follows:

1. BETA admits that Blue Force has asserted the ten claims identified in Paragraph 1 and seeks relief and money damages, but denies that it is liable to Blue Force and denies that Blue Force is entitled to any relief; in all other respects, BETA denies the allegations in Paragraph 1.

2. BETA admits that (i) Blue Force is a corporation that designs and manufactures composite structures for aerospace customers; (ii) BETA is in the business

of developing electric vertical takeoff and landing ("eVTOL") aircraft; (iii) BETA and Blue Force entered into a Teaming Agreement and other contracts, the contents of which speak for themselves; (iv) BETA has forecast that it is working to receive orders for 3,000 aircraft within the 10-year period after it commences full-scale manufacturing; and (v) BETA has worked with other companies that design and manufacture aircraft. BETA also admits that on May 7, 2021, it gave Blue Force written notice that it was terminating its ALIA Structures Design, Development and Manufacture Phase I – Prototype Vehicle contract with Blue Force, which it had the express contractual right "to terminate . . . for convenience" [D.E. 1-3 at 15]. In all other respects, BETA denies the allegations in Paragraph 2.

3.      BETA admits the allegations in Paragraph 3.

4.      BETA admits that it is Delaware corporation that has its principal place of business in Vermont. BETA denies the remaining allegations in Paragraph 4.

5.      BETA admits that (i) this Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1331 and 18 U.S.C. § 1836(c); (ii) the Court may exercise supplemental jurisdiction over Blue Force's state law claims under 28 U.S.C. § 1367; and (iii) BETA and Blue Force are citizens of different States. BETA lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 5 concerning the amount in controversy and the existence of diversity jurisdiction under 28 U.S.C. § 1332 as to Blue Force's claims, and consequently denies them. In all other respects, BETA denies the allegations in Paragraph 5.

6.      BETA admits that this Court has personal jurisdiction over it in this matter. BETA denies that it has caused any damage to Blue Force, denies that it wrongfully terminated any contractual relationship with Blue Force, and denies that it breached any contract with Blue Force.  In all other respects, BETA denies the allegations in Paragraph 6.

7.      BETA admits that venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) and that Blue Force maintains its principal place of business in this judicial district; in all other respects, BETA denies the allegations in Paragraph 7.

8.      BETA lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 8, and consequently denies them.

9.      BETA admits the allegations of Paragraph 9 upon information and belief.

10.     BETA lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 10, and consequently denies them.

11.     BETA admits that Dr. Rothblatt met Kyle Clark at a meeting with Piasecki Aircraft Corporation and introduced herself and discussed working with Mr. Clark and United Therapeutics on a project not initially involving Blue Force and subsequently on an early stage program sometimes referred to as UTODS.  BETA lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 11, and consequently denies them.

12.     BETA admits that there were earlier projects and undertakings that involved United Therapeutics, Blue Force, and BETA, but denies that United Therapeutics ever paid

3

BETA for a transcontinental flight; in all other respects BETA denies the allegations in Paragraph 12.

13.     BETA admits that (i) it entered into a Manufacturing Agreement with Blue Force, the contents of which speak for themselves, on October 11, 2017; (ii) a true copy of that Manufacturing Agreement is attached to the FAC as Exhibit A; and (iii) Paragraph 13 selectively quotes portions of the Manufacturing Agreement, the contents of which, viewed in full, speak for themselves. BETA lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 13 concerning where Blue Force executed the Manufacturing Agreement, and consequently denies them. In all other respects, BETA denies the allegations in Paragraph 13.

14.     BETA denies the allegations in Paragraph 14.

15.     BETA admits that BETA and Blue Force discussed during the relevant time various opportunities regarding how to build aircraft for United Therapeutics, and entered into the Teaming Agreement, which is attached to the FAC as Exhibit B and speaks for itself; in all other respects, BETA denies the allegations in Paragraph 15.

16.     BETA admits that Blue Force executed the Teaming Agreement with BETA on January 16, 2018, and that a true copy of the Teaming Agreement is attached to the FAC as Exhibit B. BETA lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 16 concerning where Blue Force executed the Teaming Agreement, and consequently denies them. In all other respects, BETA denies the allegations in Paragraph 16.

17.    BETA admits that the contents of the Teaming Agreement speak for themselves; in all other respects, BETA denies the allegations in Paragraph 17.

18.    BETA admits that Paragraph 18 selectively quotes and attempts to paraphrase certain portions of the Teaming Agreement, the contents of which, viewed in full, speak for themselves; in all other respects, BETA denies any remaining allegations in Paragraph 18.

19.    BETA admits that it worked with Blue Force on an opportunity to partner with United Therapeutics.   BETA lacks knowledge or information concerning what individuals and/or documents Paragraph 19 purports to quote, and consequently denies those allegations.  In all other respects, BETA denies the allegations of Paragraph 19.

20.    BETA admits that (i) it entered into the ALIA Structures Design, Development and Manufacture Phase I – Prototype Vehicle contract (the "ALIA Contract") with Blue Force on October 1, 2018; and (ii) a true copy of that contract is attached to the FAC as Exhibit C.  BETA lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 20 concerning where Blue Force executed the ALIA Contract, and consequently denies them.  In all other respects, BETA denies the allegations in Paragraph 20.

21.    BETA admits that Paragraph 21 selectively quotes portions of the ALIA Contract, the contents of which, viewed in full, speak for themselves; in all other respects, BETA denies the allegations in Paragraph 21.

5

22.     BETA admits that Paragraph 22 selectively quotes portions of the ALIA Contract, the contents of which, viewed in full, speak for themselves; in all other respects, BETA denies the allegations in Paragraph 22.

23.     BETA admits that Paragraph 23 selectively quotes portions of the ALIA Contract, the contents of which, viewed in full, speak for themselves; in all other respects, BETA denies the allegations in Paragraph 23.

24.     BETA admits that Paragraph 24 selectively quotes portions of the ALIA Contract, the contents of which, viewed in full, speak for themselves; in all other respects, BETA denies the allegations in Paragraph 24.

25.     BETA admits that it had discussions with Blue Force in 2019 about BETA acquiring Blue Force.  BETA denies that it was incorporated in 2017.  In all other respects, BETA denies the allegations in Paragraph 25.

26.     BETA admits that it met regularly with Blue Force during the course of the work on the ALIA Contract and addressed issues as they arose; in all other respects, BETA denies the allegations in Paragraph 26.

27.     BETA lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 27, and consequently denies them.

28.     BETA admits that (i) the contents of the ALIA Contract speak for themselves and (ii) Blue Force personnel sometimes worked at BETA's facilities in Vermont at BETA's expense; in all other respects, BETA denies the allegations in Paragraph 28.

6

29.     BETA admits that (i) the article cited in footnote 1 on page 10 of the FAC, the contents of which speak for themselves, discusses Blue Force's fabrication of composite structures for the first ALIA 250c prototype aircraft and (ii) BETA agreed to purchase a second ALIA airframe from Blue Force; in all other respects, BETA denies the allegations of Paragraph 29.

30.     BETA admits that Blue Force selectively quotes part of an email chain between Kyle Clark and Scott Bledsoe, a full copy of which was attached as Exhibit 1 to BETA's Answer [D.E. 14-1], the contents of which, viewed in full, speak for themselves. BETA denies that Paragraph 30 accurately characterizes the communications between BETA and Blue Force.  In all other respects, BETA denies the allegations of Paragraph 30.

31.     BETA admits that it provided the ALIA-250 production forecast document to Blue Force, which reflected the increased scope of the program, and that a true copy of that document is attached to the FAC as Exhibit D.  BETA lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 31, and consequently denies them.

32.     BETA lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 32, and consequently denies them.

33.     BETA lacks sufficient knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 33, and consequently denies them.

34.     BETA admits that Blue Force supplied it with two airframes (albeit late, nonconforming, and at additional cost), two sets of lift propellers (one suitable for hovering

7

and one intended to be suitable for transition flight), two flight simulator fuselages, and engineering support at BETA's expense. In all other respects, BETA denies the allegations in Paragraph 34.

35.     BETA admits that it sent a request for proposal to Blue Force on February 16, 2021, and sent a form Development and Supply Agreement to Blue Force on March 1, 2021, and admits that Blue Force never submitted a response to the request for proposal; in all other respects, BETA denies the allegations in Paragraph 35.

36.     BETA admits upon information and belief that Blue Force reached out to Spirit AeroSystems ("Spirit"). BETA denies that any of its discussions or agreements with Spirit breached the terms of the ALIA Contract. In all other respects, BETA denies the allegations in Paragraph 36.

37.     BETA admits that Mr. Clark disclosed that BETA has had discussions in the ordinary course with other aerospace firms but denies that any of those discussions breached the ALIA Contract. BETA admits upon information and belief that Blue Force and Spirit had discussions that eventually ended. BETA lacks knowledge or information sufficient to form a belief about the truth of the other allegations in Paragraph 37 about Blue Force's interactions with Spirit, and consequently denies them. In all other respects, BETA denies the allegations in Paragraph 37.

38.     BETA admits that it had certain business discussions with Spirit, but denies that those discussions breached the contractual provision quoted in Paragraph 36 of the

FAC. BETA admits that it briefly raised a potential acquisition of Blue Force with Blue Force earlier this year. In all other respects, BETA denies the allegations in Paragraph 38.

39. BETA admits that Blue Force told BETA that it had spoken with GKN Aerospace Services Limited ("GKN") and one other supplier about matters related to the ALIA program. BETA lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 39, and consequently denies them.

40. BETA admits that it had ongoing communications with Blue Force during March and April 2021 and that it is a mischaracterization to imply that any rescheduling that occurred was of any consequence; in all other respects, BETA denies the allegations in Paragraph 40.

41. BETA admits that (i) on May 5, 2021, the United States Air Force announced that it had awarded the first airworthiness approval for a manned electric aircraft to BETA's ALIA aircraft; (ii) Blue Force was involved in fabricating the ALIA 250 prototype aircraft; and (iii) on May 7, 2021, BETA gave Blue Force written notice that it was terminating the ALIA Contract, which it had the express contractual right "to terminate . . . for convenience" [D.E. 1-3 at 15]. BETA lacks knowledge or information sufficient to form a belief about the truth of Blue Force's speculative allegations about what the United States Air Force might have done in the counterfactual scenario outlined in the third sentence of Paragraph 41, and consequently denies those allegations. In all other respects, BETA denies the allegations in Paragraph 41.

9

42.     BETA admits that (i) Kyle Clark and David Churchill met with Blue Force at its Morrisville, North Carolina facility on April 22, 2021 and there was discussion of Blue Force's admitted inability to manufacture the ALIA aircraft at scale and about alternative involvement that Blue Force might have in the ALIA program and (ii) the contents of the document attached to the FAC as Exhibit D speak for themselves; in all other respects, BETA denies the allegations in Paragraph 42.

43.     BETA admits that Blue Force sent a quote, the contents of which speak for themselves, that reflected its admitted inability to certify the structure or manufacture the ALIA aircraft structure at scale; in all other respects, BETA denies the allegations in Paragraph 43.

44.     BETA admits that (i) discussions between Blue Force and BETA continued up to and including the day Blue Force, without any prior discussion, filed this action, and included efforts by BETA to find a role for Blue Force that it was able to execute and (ii) Paragraph 44 selectively quotes an email that Mr. Churchill sent on April 29, 2021, the contents of which, viewed in full, speak for themselves; in all other respects, BETA denies the allegations in Paragraph 44.

45.     BETA admits that (i) on May 7, 2021, BETA's CEO, Kyle Clark, gave Blue Force written notice that BETA was terminating the ALIA Contract, which it had the express contractual right "to terminate . . . for convenience" [D.E. 1-3 at 15] and (ii) Paragraph 45 selectively quotes portions of that notice, a full copy of which was attached

10

as Exhibit 1 to BETA's Answer [D.E. 14-1], the contents of which, viewed in full, speak for themselves; in all other respects, BETA denies the allegations in Paragraph 45.

46.    BETA admits that (i) on May 18, 2021, it announced that it had raised $368 million in a private funding round to support continued development of an integrated system for electric vertical aviation; (ii) its announcement identified logistics, medical, government, and passenger travel as key aviation market segments that BETA serves; and (iii) its developmental plans at the time when this funding round was ongoing included a producing a third prototype aircraft; in all other respects, BETA denies the allegations in Paragraph 46.

47.    BETA admits that the terms of the ALIA Contract speak for themselves; in all other respects, BETA denies the allegations in Paragraph 47.

48.    BETA lacks knowledge or information sufficient to form a belief about the truth of the allegation in Paragraph 48 that GKN terminated a contract with Blue Force, and consequently denies them; in all other respects, BETA denies the allegations in Paragraph 48.

49.    BETA admits that the terms of the ALIA Contract and the Manufacturing Agreement speak for themselves; in all other respects, BETA denies the allegations in Paragraph 49.

50.    BETA denies the allegations of Paragraph 50.

51.    BETA denies the allegations of Paragraph 51.

52.     BETA admits that discussions between Blue Force and BETA continued up to and including the day the lawsuit was filed and included efforts by BETA to find a role for Blue Force that it was able to execute; in all other respects, BETA denies the allegations in Paragraph 52.

53.     BETA admits that (i) on May 14, 2012, Scott Bledsoe sent an email to Kyle Clark and (ii) Paragraph 53 selectively quotes portions of that email, the contents of which, viewed in full, speak for themselves; in all other respects, BETA denies the allegations in Paragraph 53.

54.     BETA incorporates by reference its responses to Paragraphs 1 through 53.

55.     BETA admits that BETA and Blue Force entered into the Manufacturing Agreement and ALIA Contract, the contents of which speak for themselves; in all other respects, BETA denies the allegations in Paragraph 55.

56.     BETA denies the allegations in Paragraph 56.

57.     BETA denies the allegations in Paragraph 57.

58.     BETA admits that (i) on May 18, 2021, it announced that it had raised $368 million in a private funding round to support continued development of an integrated system for electric vertical aviation and (ii) its announcement identified logistics, medical, government, and passenger travel as key aviation market segments that BETA serves; in all other respects, BETA denies the allegations in Paragraph 58.

59.     BETA incorporates by reference its responses to Paragraphs 1 through 58.

60.    BETA admits that BETA and Blue Force entered into the Teaming Agreement and ALIA Contract, the contents of which speak for themselves.  BETA denies that the parties entered into any oral contract, "implied in fact" contract, or "joint contractual effort" as suggested in Paragraph 60; in all other respects, BETA denies the allegations in Paragraph 60.

61.    BETA denies the allegations of Paragraph 61.

62.    BETA denies the allegations of Paragraph 62.

63.    BETA denies the allegations of Paragraph 63.

64.    BETA denies the allegations of Paragraph 64.

65.    BETA incorporates by reference its responses to Paragraphs 1 through 64.

66.    BETA admits that the ALIA Contract speaks for itself; in all other respects, BETA denies the allegations of Paragraph 66.

67.    BETA does not understand, and thus lacks knowledge or information sufficient to form a belief about the truth of, the vague allegations in Paragraph 67 concerning BETA's knowledge of a wide range of undefined categories of purported "Trade Secrets," and consequently denies them; in all other respects, BETA denies the allegations in Paragraph 67.

68.    BETA does not understand, and thus lacks knowledge or information sufficient to form a belief about the truth of, the vague allegations in Paragraph 68 concerning the public's access to, knowledge of, and/or ability ascertain a wide range of

13

undefined categories of purported "Trade Secrets," and consequently denies them; in all other respects, BETA denies the allegations in Paragraph 68.

69.     BETA lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 69, and consequently denies them.

70.     BETA does not understand, and thus lacks knowledge or information sufficient to form a belief about the truth of, the vague allegations in Paragraph 70 that it was given the opportunity to acquire a wide range of undefined categories of purported "Trade Secrets," and consequently denies them; in all other respects, BETA denies the allegations in Paragraph 70.

71.     BETA denies the allegations of Paragraph 71.

72.     BETA denies the allegations of Paragraph 72.

73.     BETA denies the allegations of Paragraph 73.

74.     BETA denies the allegations of Paragraph 74.

75.     BETA denies the allegations of Paragraph 75.

76.     BETA incorporates by reference its responses to Paragraphs 1 through 75.

77.     BETA lacks knowledge or information sufficient to form a belief about whether Blue Force's purported "Trade Secrets" are related to products and services intended for interstate commerce or constitute trade secrets under 18 U.S.C. § 1839(3), and consequently denies them; in all other respects, BETA denies the allegations of Paragraph 77.

78.     BETA denies the allegations of Paragraph 78.

14

79. BETA denies the allegations of Paragraph 79.

80. BETA denies the allegations of Paragraph 80.

81. BETA incorporates by reference its responses to Paragraphs 1 through 80.

82. BETA lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 82, and consequently denies them.

83. BETA admits that its contracts with Blue Force speak for themselves; in all other respects, BETA denies the allegations in Paragraph 83.

84. BETA denies the allegations of Paragraph 84.

85. BETA denies the allegations of Paragraph 85.

86. BETA denies the allegations of Paragraph 86.

87. BETA denies the allegations of Paragraph 87.

88. BETA incorporates by reference its responses to Paragraphs 1 through 87.

89. BETA denies the allegations of Paragraph 89.

90. BETA denies the allegations of Paragraph 90.

91. BETA denies the allegations of Paragraph 91.

92. BETA denies the allegations of Paragraph 92.

93. BETA denies the allegations of Paragraph 93.

94. BETA incorporates by reference its responses to Paragraphs 1 through 93.

95. The allegations in Paragraph 95 constitute legal conclusions that do not require a response and accordingly are denied, but BETA admits that as set forth in its Verified Amended Counterclaims it seeks a declaratory judgment as to the rights and

responsibilities of the parties; in all other respects, BETA denies the allegations in Paragraph 95.

96.     BETA denies the allegations of Paragraph 96.

97.     BETA admits that Blue Force seeks a declaration but denies that it is entitled to the declaration it has requested; in all other respects, BETA denies the allegations in Paragraph 97.

98.     BETA admits that there is a dispute between the parties; in all other respects, BETA denies the allegations in Paragraph 98.

99.     BETA admits that Blue Force prays for a declaratory judgment on the terms set forth in Paragraph 99, including subparagraphs (a) through (c), but denies that Blue Force is entitled to such a declaratory judgment; in all other respects, BETA denies the allegations in Paragraph 99 and its subparagraphs.

100.    BETA incorporates by reference its responses to Paragraphs 1 through 99.

101.    BETA denies the allegations of Paragraph 101.

102.    BETA admits that Blue Force received all the compensation that it was entitled to under the contracts between the parties; in all other respects, BETA denies the allegations in Paragraph 102.

103.    BETA admits that Blue Force received all the compensation that it was entitled to under the contracts between the parties, and then some; in all other respects, BETA denies the allegations in Paragraph 103.

104.    BETA incorporates by reference its responses to Paragraphs 1 through 103.

16

105. BETA lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 105, and consequently denies them.

106. BETA denies the allegations of Paragraph 106.

107. BETA lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 107 concerning GKN's actions, and consequently denies them; in all other respects, BETA denies the allegations in Paragraph 107.

108. BETA denies the allegations of Paragraph 108.

109. BETA denies the allegations of Paragraph 109.

110. BETA denies the allegations of Paragraph 110.

111. BETA denies the allegations of Paragraph 111.

112. BETA incorporates by reference its responses to Paragraphs 1 through 111.

113. BETA denies the allegations of Paragraph 113.

114. BETA denies the allegations of Paragraph 114.

115. BETA denies the allegations of Paragraph 115.

116. BETA denies the allegations of Paragraph 116.

BETA denies any allegations in Blue Force's "Prayer For Relief" [D.E. 23 at 30-31] and denies that Blue Force is entitled to any relief in this action.

## QUALIFIED GENERAL DENIAL

All allegations in the FAC not specifically admitted herein are hereby denied.

## FIRST AFFIRMATIVE DEFENSE

The FAC fails to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

The breach of contract claims asserted in the FAC fail because BETA performed and fully discharged all of its material obligations under the contracts at issue.

## THIRD AFFIRMATIVE DEFENSE

The breach of contract claims asserted in the FAC based on an alleged "right of first refusal" fail because BETA gave Blue Force the opportunity to exercise a right of first refusal, including by issuing a Request for Proposal to Blue Force. In response, Blue Force (i) refused to exercise that right, (ii) declined to submit a response to that Request for Proposal, and (iii) affirmatively communicated that it was unwilling and/or unable to perform the requested scope of work.

## FOURTH AFFIRMATIVE DEFENSE

The breach of contract claims asserted in the FAC based on BETA's termination of the ALIA Contract fail because that contract gave BETA the express right to terminate the contract for convenience, and BETA complied with the terms of the contract when it terminated the contract for convenience by providing written notice to Blue Force (actual receipt of which has been acknowledged by Blue Force) on May 7, 2021.

## FIFTH AFFIRMATIVE DEFENSE

The breach of contract claims based on an alleged "oral contract," "implied in fact contract," or any other purported unwritten contract or agreement are barred by the Statute of Frauds.

## SIXTH AFFIRMATIVE DEFENSE

18

The breach of contract claims based on an alleged "oral contract," "implied in fact contract," or any other purported unwritten contract or agreement between BETA and Blue Force fail because (i) there was never any meeting of the minds on the material terms of any such purported unwritten contract or agreement and (ii) there was no consideration for any such purported unwritten contract or agreement.

## SEVENTH AFFIRMATIVE DEFENSE

The breach of contract claims based on an alleged "oral contract," "implied in fact contract," or any other purported unwritten contract or agreement fail to the extent that they attempt to limit, vary, or expand the terms of the written contracts between BETA and Blue Force.

## EIGHTH AFFIRMATIVE DEFENSE

The misappropriation of trade secrets claims fail because Blue Force has not specifically identified any trade secret that it owns that was misappropriated by BETA.

## NINTH AFFIRMATIVE DEFENSE

The misappropriation of trade secrets claims fail to the extent that Blue Force's purported trade secrets are generally known, publicly available, lack commercial/economic value, and/or are readily ascertainable through independent development, reverse engineering, or other proper means.

## TENTH AFFIRMATIVE DEFENSE

The misappropriation of trade secrets claims fail to the extent that Blue Force's purported trade secrets have not been the subject of efforts that are reasonable under the circumstances to maintain their secrecy.

## ELEVENTH AFFIRMATIVE DEFENSE

The misappropriation of trade secrets claims fail to the extent they concern Blue Force's Background IP and/or Airframe Mfg IP (as those terms are defined in the ALIA Contract) because Blue Force expressly granted BETA an "irrevocable, transferable, perpetual, non-exclusive, royalty-free, fully-paid license to Airframe Mfg IP and required BFT Background IP in the ALIA program" [D.E. 1-3 at 14].

## TWELFTH AFFIRMATIVE DEFENSE

The tortious interference with prospective economic advantage claim fails because BETA has not induced any third party to refrain from entering into a contract with Blue Force, because BETA's alleged and/or actual conduct has been privileged and in pursuit of BETA's legitimate business interests, and because BETA's alleged and/or actual conduct has not been malicious or taken for the purpose of inducing any third party to refrain from entering into a contract with Blue Force.

## THIRTEENTH AFFIRMATIVE DEFENSE

The unjust enrichment claim fails because BETA and Blue Force's relationship was governed by written contracts, namely the Manufacturing Agreement, the Teaming Agreement, and the ALIA Contract, and any benefit that Blue Force conferred on BETA was either (i) conferred and compensated for under the terms of such contracts, (ii)

20

conferred gratuitously or officiously by Blue Force, or (iii) not consciously accepted by BETA.

## FOURTEENTH AFFIRMATIVE DEFENSE

BETA expressly denies that Blue Force is entitled to any relief. In the event that it is determined that Blue Force is entitled to relief, the equitable relief sought in the FAC, including injunctive relief, is barred because Blue Force has an adequate remedy at law, and/or has unclean hands and has acted inequitably.

## FIFTEENTH AFFIRMATIVE DEFENSE

BETA expressly denies that Blue Force has been damaged by any act or omission by BETA. In the event that it is determined that Blue Force has been damaged, Blue Force's claims and the relief sought are barred, at least in part, to the extent that Blue Force has failed to mitigate its damages and/or to the extent BETA has rights of recoupment or offset in connection with its counterclaims set forth in this action.

## SIXTEENTH AFFIRMATIVE DEFENSE

BETA affirmatively alleges that: (i) an award of punitive damages would violate the United States and North Carolina Constitutions to the extent that BETA was not afforded procedural and substantive due process; (ii) an award of punitive damages under the facts of this case would violate the excessive fines and cruel and unusual punishment clauses of the United States and North Carolina Constitutions; (iii) an award of punitive damages would be unlawful because BETA engaged in good faith efforts to comply with applicable law and did not willfully or knowingly violate or recklessly disregard applicable

law; (iv) an award of punitive damages would be otherwise be contrary to governing state and/or federal law.

The characterization of any of the foregoing defenses as "Affirmative Defenses" does not to suggest or concede that BETA bears the burden of proof on any of them, as that determination is for the Court.

BETA reserves the right to amend its Answer to amend its admissions and denials to Blue Force's allegations and/or to amend and/or assert additional defenses and counterclaims that are discovered during the course of this litigation.

WHEREFORE, having fully responded to Blue Force's FAC, BETA respectfully requests that the Court:

1. Dismiss Blue Force's claims with prejudice;

2. Order that Blue Force have and recover nothing from BETA;

3. Award BETA the costs that it incurs and has incurred in defending this action, including is reasonable attorneys' fees; and

4. Grant BETA any other relief the Court deems just and proper.

## VERIFIED AMENDED COUNTERCLAIMS

Defendant and Counterclaim Plaintiff BETA Technologies, Inc. ("BETA") incorporates herein by reference the denials, admissions, and affirmative defenses contained in its Amended Answer as if set forth fully herein. For its Amended Counterclaims,[1] BETA alleges as follows:

## PARTIES

1. Counterclaim Plaintiff BETA is a Delaware corporation that has its principal place of business in Burlington, Vermont.

2. Counterclaim Defendant Blue Force is a North Carolina corporation that has its principal place of business in Morrisville, North Carolina.

## JURISDICTION AND VENUE

3. The Court has subject matter jurisdiction over BETA's claims under 28 U.S.C. § 1332(a) (diversity jurisdiction) and 28 U.S.C. § 1367 (supplemental jurisdiction). The Court has personal jurisdiction over Blue Force based on its filing of the Complaint in this Court. Venue is proper and Blue Force has waived any objection thereto by filing the Complaint in this Court.

## FACTUAL BACKGROUND

4. BETA is in the business of developing electric vertical takeoff and landing ("eVTOL") aircraft that also have short takeoff and landing and conventional takeoff and

---

[1] BETA hereby amends its Verified Counterclaims as a matter of course within 21 days after service of Blue Force's Answer to those Verified Counterclaims [D.E. 31], as is permitted under Federal Rule of Civil Procedure 15(a)(1)(B).

landing capabilities.  Blue Force designs and custom manufactures composite structures for aerospace customers.

5.      On October 1, 2018, BETA and Blue Force entered into a contract titled ALIA Structures Design, Development and Manufacture Phase I – Prototype Vehicle (the "ALIA Contract").   Under the ALIA Contract, Blue Force was to participate in the development of structural elements for a prototype eVTOL aircraft (the "ALIA aircraft"). A true copy of the ALIA Contract is attached as Exhibit C to the Complaint [D.E. 1-3] and incorporated by reference as if fully set forth herein.

6.      The ALIA Contract states that "BETA shall own and control all intellectual property generated by [Blue Force] in the performance of this contract under the 'work made for hire' doctrine.  It shall likewise own all deliverables, data and results of the services rendered by [Blue Force]."  [D.E. 1-3 at 14.]

7.      The ALIA Contract also states that "[Blue Force] warrants that any person performing services hereunder on behalf of [Blue Force] is under a continuing obligation immediately to assign all rights and ownership developed in the course of such person's provision of services, without regard to ultimate determination of inventorship or ownership . . . ."  (*Id.*)

8.      Thus, under the terms of the ALIA Contract, any intellectual property that Blue Force or any person performing services on its behalf generated in performance of the ALIA Contract is owned by BETA and is supposed to be controlled by BETA.

9.      As a carveout to this general principle, the ALIA Contract grants Blue Force the right to "own and control all Airframe manufacturing technologies and processes ('Airframe Mfg IP')."  *(Id.)*  The ALIA Contract also acknowledges that Blue Force owns and controls certain background intellectual property that was used in performing the ALIA Contract (the "Background IP").  [D.E. 1-3 at 13.]  At the same time, the ALIA Contract states that Blue Force "shall grant to BETA an irrevocable, transferable, perpetual, non-exclusive, royalty-free, fully-paid license to Airframe Mfg IP and required [Blue Force] Background IP in the ALIA program."  *(Id.)*  As such, BETA is also entitled to possess and use the Airframe Mfg IP and Background IP that is involved in the ALIA program.  Together, these provisions grant BETA *unfettered* rights to access and use any intellectual property developed or used in the ALIA program.

10.     Since entering the ALIA Contract, the Parties have executed multiple purchase orders for work relating to the ALIA program that incorporate the terms and conditions set forth in the ALIA Contract.  These purchase orders include, among others, Purchase Order 13, Purchase Order 1008, and Purchase Order 1203 (collectively, the "Purchase Orders").

11.     Because the Purchase Orders expressly incorporate the terms and conditions set forth in the ALIA Contract, BETA has the exact same rights to "own and control all intellectual property generated by [Blue Force] in the performance of" those Purchase Orders and likewise "own[s] all deliverables, data and results of the services rendered by [Blue Force]" under those Purchase Orders.  [D.E. 1-3 at 14.]

25

12.     Notwithstanding these provisions, after the filing of the Complaint in this action, Blue Force refused to provide to BETA, and denied (and may still be denying) BETA access to, specific intellectual property and deliverables, data, and results that were generated in performance of the ALIA Contract and/or the Purchase Orders by Blue Force and/or as part of the services rendered thereunder by Blue Force.  Specifically, Blue Force possessed (and may still possess), to the exclusion of BETA, native data from the Computer Assisted Design Model ("CAD") and Finite Elements Model ("FEM") for the ALIA program and other design-related data and analysis for the ALIA program (collectively, the "BETA Property").

13.     The BETA Property was also created in part by Nick Wilson, a consultant engineer who worked in conjunction with Blue Force on performing the work contemplated under the ALIA Contract and the Purchase Orders.  Mr. Wilson is affiliated with Scout Aerospace LLC and Aerospace Exploration Enterprises Corporation and also possesses some of the BETA Property.  On information and belief, Blue Force instructed Mr. Wilson to not comply with BETA's request made directly to him for delivery of the BETA Property to BETA.

14.     The BETA Property shows how the ALIA aircraft is structured and how its structures are put together.  It shows the loads, stresses, and potential failure modes of the structure of the ALIA aircraft.  It is essential to the maintenance, refinement, and safe operation of the existing ALIA aircraft prototypes, which are experimental aircraft.

26

15. At the time it filed its Verified Counterclaims [D.E. 14], BETA had only certain summaries and limited cross-sections of the BETA Property, not the original source data, which it owns by operation of the ALIA Contract and the Purchase Orders. These summaries and cross-sections were not the full scope of information that Blue Force possessed, and did not provide an adequate substitute for the native CAD, FEM, and other design-related data and analysis.

16. On June 24, 2021, BETA's CEO, Kyle Clark, sent an email to Mr. Wilson and Shawn Hermann (a Blue Force employee and Project Manager), copying Scott Bledsoe (Blue Force's Chief Executive Officer) and Peter Buzzard (a Blue Force employee). In that email, Mr. Clark requested that BETA and Mr. Wilson provide the BETA Property to BETA—its rightful owner. A true copy of that email and the follow-on correspondence on this issue was attached to BETA's Verified Counterclaims as Exhibit 2 [D.E. 14-2] and is incorporated by reference as if fully set forth herein.

17. On June 25, 2021, counsel for Blue Force sent an email to counsel for BETA in reference Mr. Clark's June 24th email and stated that "BETA should have the necessary portions of this information," but that if "on a second look" BETA still wanted Blue Force's assistance, "maybe we can put together some form of stand-alone agreement related to this particular assistance." [D.E. 14-2 at 5.]

18. On June 27, 2021, counsel for BETA emailed counsel for Blue Force and cited the contractual provisions quoted above to emphasize that BETA owns the BETA

Property and that Blue Force has no right to keep that property from BETA. [D.E. 14-2 at 3–4.]

19.    On June 28, 2021, counsel for Blue Force sent an email to counsel for BETA noting that counsel for Blue Force "did not judge the substantive validity of the request" and suggested that Blue Force had provided the deliverables and that Mr. Clark was "just having trouble locating it amongst his stuff." Counsel for Blue Force did not deny that Blue Force possessed the BETA Property or a copy of it, nor did he offer to provide the BETA Property or substantively address BETA's demand for the BETA Property. [*See* D.E. 14-2 at 2–3.]

20.    On that same day, June 28, 2021, counsel for BETA brought the dispute to a head: "The information has never been delivered. We understand [Blue Force]'s response is to refuse to immediately release or authorize the release of the requested materials which [Blue Force] has *no right* to withhold. If, on the other hand, [Blue Force] intends to honor its obligations, please confirm immediately that [Blue Force] will provide the requested information." [D.E. 14-2 at 2 (emphasis in original).] Counsel for Blue Force did not respond to this request, did not provide any of the BETA Property to BETA in response to this request, and did not offer any contractual, legal, or equitable justification for failing to do so.

21.    On July 13, 2021, the Court entered a Temporary Restraining Order ("TRO") requiring Blue Force to give BETA access to the BETA Property. [D.E. 25.] On July 26,

28

2021, the Court entered an Order converting the Temporary Restraining Order into a preliminary injunction. [D.E. 29.]

22. Following this Court's entry of the TRO, Blue Force provided BETA access to at least some of the BETA Property. BETA is still in the process of determining whether Blue Force provided BETA access to all of the BETA Property. However, notwithstanding the contractual terms and the entry of the TRO and preliminary injunction, Blue Force continues to assert that BETA is not entitled to possess, own, or control the BETA Property and continues to assert that it should be entitled to possess, own, and control the BETA Property to the exclusion of BETA.

23. The BETA Property belongs to BETA. It is BETA's property and is among the intellectual property generated under the ALIA Contract and Purchase Orders. Blue Force knows the value of that information to BETA and its importance to the ALIA program. Blue Force has no contractual, legal, or equitable right to withhold the BETA Property from BETA. Upon information and belief, Blue Force was, and may still be, withholding such information not based on any claim of right, but maliciously and in bad faith to create leverage against BETA in connection with this action. Under the terms of the ALIA Contract and Purchase Orders, BETA is entitled have and retain full and undisputed ownership and control over the BETA Property.

24. There is vigorous competition in the electric aircraft space. For example, Blue Force is publicly currently providing support to a direct competitor of BETA's, an aerospace firm called Electra.aero, Inc. ("Electra"), and possibly others. Electra entered

29

the marketplace after BETA. Electra's website and illustration of its similar short takeoff and landing ("eSTOL") technology can be found here: https://www.electra.aero/. There are also numerous other competitors. Every day that BETA is delayed from accessing the BETA Property puts it at a further disadvantage in this competitive space.

25.    Prior to working with BETA, Blue Force had no experience with electric aircraft integration, but it now holds itself out as having knowledge, skill, and expertise in electric aircraft integration, and has been announced as Electra's lead partner in the design and fabrication of a hybrid electric demonstrator aircraft that Electra plans to fly in 2021. According to news reports, Blue Force's CEO, Scott Bledsoe, has stated that Blue Force is "excited to be working with [Electra's] high-energy team to get the technology demonstrator safely and quickly in the air and start collecting flight test data."

26.    Upon information and belief, Blue Force has used and is using intellectual property and information owned by BETA, including intellectual property, deliverables, data and results developed, generated, and used in the ALIA program and BETA Background IP used in the ALIA Program (collectively, the "BETA-Owned Information") to, in collaboration with Electra, conceptualize, design, generate, and manufacture Electra's technology demonstrator aircraft and future production aircraft. Upon information and belief, as may be revealed by discovery, Blue Force has used the BETA-Owned Information in collaboration with other third parties.

27.    During the development of the ALIA aircraft, BETA discovered, developed, and refined a proprietary methodology for mitigating electrostatic and electromagnetic

30

noise across the airframe structures by applying an electrically conductive coating to the composite structure. BETA shared this methodology, including the relevant specifications, parameters, and application methodology with Blue Force, along with the test results that supported this methodology, and collaborated with Blue Force to implement use of this technology in the prototype ALIA aircraft. This information was relevant to and necessary for Blue Force's fabrication and generation of the composite structures. While Blue Force was aware of this material and had used it for another purpose, Blue Force had not previously used it for noise mitigation and that application and methodology, which were developed by BETA, were not previously known to Blue Force.

28.     During the development of the ALIA aircraft, BETA shared hybridization studies and electric battery test data with Blue Force. Among other things, BETA shared a tool and related methodology for thermal management of batteries in electric aircraft. This information was relevant to and necessary for Blue Force's fabrication and generation of the composite structures, and was not previously known to Blue Force. The tool and methodology that BETA shared with Blue Force are equally relevant and useful for designing and manufacturing hybrid aircraft like the one Electra is developing, since hybrid electric aircraft rely on the same types of battery systems that pure electric aircraft use and both types of aircraft have similar power profiles for takeoff, cruising, and landing.

29.     During the development of the ALIA aircraft, BETA shared with Blue Force information about BETA's proprietary electrical distribution systems architecture, which was designed to maintain a reliable power supply to the electric propulsion system in the

31

event of a failure. This information was relevant to and necessary for Blue Force's fabrication and generation of the composite structures, and was not previously known to Blue Force. It is equally relevant and useful for designing and manufacturing a hybrid aircraft like the one Electra is developing, since hybrid aircraft rely on the same types of battery systems that purely electric aircraft use.

30. Upon information and belief, Blue Force has used BETA-Owned Information, including but not limited to the information, processes, and methodology described above, in working on the Electra project described above, and has in the process disclosed such BETA-Owned Information to Electra and to others, as may be revealed by discovery.

31. Upon information and belief, Blue Force has also disclosed BETA-Owned Information to its competitors, including Alaka'i Technologies, Joby Aviation, and Archer Aviation. For example, Blue Force apparently allowed representatives of Alaka'i to tour its facilities where the ALIA aircraft was under construction and in plain view without taking any measures to conceal that ongoing production process or otherwise prevent disclosure of design-specific BETA-Owned Information to Alaka'i. Upon information and belief, Blue Force has also allowed representatives of other competitors of BETA to see the ALIA aircraft under construction without taking measures to conceal that process or prevent disclosure of BETA-Owned Information.

## FIRST COUNTERCLAIM
**(Breach of Written Contract – Withholding of BETA's Property)**

32

32.     BETA realleges and incorporates herein by reference the preceding paragraphs of its Amended Counterclaims.

33.     The ALIA Contract and Purchase Orders constitute a valid and binding contract(s) between BETA and Blue Force and their terms were bargained for and are supported by mutual assent and adequate consideration.

34.     BETA performed all of its material obligations under the ALIA Contract and the Purchase Orders.

35.     As noted above, the ALIA Contract provides that "BETA shall own and control all intellectual property generated by [Blue Force] in the performance of this contract under the 'work made for hire' doctrine.  It shall likewise own all deliverables, data and results of the services rendered by [Blue Force]."  [D.E. 1-3 at 14.]  The Purchase Orders expressly incorporate this provision.

36.     The ALIA Contract also provides that "[Blue Force] warrants that any person performing services hereunder on behalf of [Blue Force] is under a continuing obligation immediately to assign all rights and ownership developed in the course of such person's provision of services, without regard to ultimate determination of inventorship or ownership . . . ."  [D.E. 1-3 at 14.]  The Purchase Orders expressly incorporate this provision.

37.     Under the terms of the ALIA Contract and the Purchase Orders, BETA is entitled to own and control the BETA Property and any other property that it is entitled to under the provisions cited in the preceding two paragraphs.

38.     Blue Force provided some of the BETA Property to BETA following this Court's entry of the TRO, but BETA is still in the process of determining whether Blue Force has provided BETA with access to all of the BETA Property.  Regardless, and notwithstanding the entry of the TRO and preliminary injunction, Blue Force continues to deny that BETA owns and is entitled to control the BETA Property, and continues to assert that it is entitled to use, own, and control the BETA Property to the exclusion of BETA.

39.     Blue Force materially breached the ALIA Contract and the Purchase Orders by withholding the BETA Property and refusing to provide it to BETA, remains in material breach of the ALIA Contract and the Purchase Orders to the extent that it has not returned all of the BETA Property to BETA, and, upon information and belief, materially breached the ALIA Contract and the Purchase Orders by instructing Mr. Wilson to withhold the BETA Property from BETA.

40.     Blue Force's breach described above has caused and will continue to cause damage to BETA in an amount in excess of $75,000 to be proven at the trial of this matter.

### SECOND COUNTERCLAIM
### (Breach of Written Contract – Disclosure/Use of BETA-Owned Information)

41.     BETA realleges and incorporates herein by reference the preceding paragraphs of its Amended Counterclaims.

42.     The ALIA Contract and Purchase Orders constitute a valid and binding contract(s) between BETA and Blue Force and their terms were bargained for and are supported by mutual assent and adequate consideration.

34

43. BETA performed all of its material obligations under the ALIA Contract and the Purchase Orders.

44. Under the terms of the ALIA Contract and the Purchase Orders, BETA is entitled to "own and control all intellectual property generated by [Blue Force] in the performance of" the ALIA Contract and the Purchase Orders and likewise "own[s] all deliverables, data and results of the services rendered by [Blue Force]" under the ALIA Contract and the Purchase Orders. [D.E. 1-3 at 14.]

45. In performing the ALIA Contract and Purchase Orders and rendering services thereunder, Blue Force obtained access to the BETA-Owned Information, which was necessary for Blue Force to generate and perform its work under the ALIA Contract.

46. BETA has taken reasonable measures to prevent disclosure and use by Blue Force of the BETA-Owned Information, including entering into the ALIA Contract and maintaining password protection and other access limitations with respect to BETA-Owned Information.

47. On information and belief, Blue Force has shared and disclosed, without BETA's consent and in violation of the ALIA Contract and/or the Purchase Orders, BETA-Owned Information with Electra in working with Electra to develop and manufacture an eSTOL aircraft. This is evidenced by the fact that Blue Force, which originally specialized in the development and manufacturing of composite structures for aerospace customers, and sought BETA out for its expertise electric aircraft integration, now holds itself out publicly as having expertise in electric aircraft integration, and is now working on design,

manufacturing, and testing of a hybrid electric aircraft for Electra. Upon information and belief, the only reason Blue Force has such expertise is that it is sharing, disclosing, and benefiting from the improper use of BETA-Owned Information.

48.     On information and belief, Blue Force has also shared and disclosed BETA-Owned Information with third parties, including but not limited to Alaka'i Technologies, Joby Aviation, and Archer Aviation.

49.     Blue Force has materially breached the ALIA Contract and Purchase Orders by using BETA's Proprietary Information for its own purposes and benefit without BETA's authorization, thereby compromising and undermining BETA's exclusive ownership of and right to control such information.

50.     Blue Force has materially breached the ALIA Contract and Purchase Orders by sharing and disclosing BETA's Proprietary Information to third parties, including BETA's competitors, without BETA's authorization, thereby compromising and undermining BETA's exclusive ownership of and right to control such information.

51.     Blue Force's breached described above have caused and will continue to cause damage to BETA in an amount in excess of $75,000 to be proven at the trial of this matter.

### THIRD COUNTERCLAIM
**(Breach of the Duty of Good Faith and Fair Dealing)**

52.     BETA realleges and incorporates herein by reference the preceding paragraphs of its Amended Counterclaims.

36

53.     There is an implied duty of good faith and fair dealing that inheres in every contract.  This duty is breached when a party to a contract takes an action which has the effect of preventing the other party to the contract from receiving the benefit of its bargain.

54.     As the ALIA Contract states that BETA shall own "own and control all intellectual property generated by Blue Force in the performance of this contract" and "own all deliverables, data and results of the services rendered by Blue Force," one of the benefits of the bargain for BETA was that it would, at all times, be able to have, use, and enjoy the BETA Property.

55.     Another of the benefits of the bargain for BETA was that it would be the only party that owned and was entitled to control the BETA-Owned Information.

56.     Blue Force breached its duty of good faith and fair dealing under the ALIA Contract and the Purchase Orders by withholding the BETA Property and refusing to provide it to BETA.  Upon information and belief, Blue Force also breached its duty of good faith and fair dealing under the ALIA Contract and the Purchase Orders by instructing Mr. Wilson to withhold the BETA Property from BETA.

57.     Upon information and belief, Blue Force further breached its duty of good faith and fair dealing under the ALIA Contract and/or the Purchase Orders by sharing BETA-Owned Information with third parties, thereby compromising and undermining BETA's exclusive ownership of and right to control such information.

58.     Blue Force's breaches of the duty of good faith and fair dealing described above have caused, and will continue to cause, harm to BETA in an amount in excess of $75,000 to be proven at the trial of this matter.

<center>

**FOURTH COUNTERCLAIM**
**(Conversion/Replevin)**

</center>

59.     BETA realleges and incorporates herein by reference the preceding paragraphs of its Amended Counterclaims.

60.     The BETA Property is the sole and exclusive property of BETA and was never sold, assigned, or conveyed to Blue Force.

61.     Blue Force lawfully obtained access to the BETA Property, which rightfully belongs to BETA, in the course of performing the ALIA Contract and the Purchase Orders.

62.     BETA specifically requested that Blue Force return the BETA Property, but Blue Force refused to comply with that request.  Only after it was ordered to do so did Blue Force provide BETA with access to some of the BETA Property.  BETA is still determining whether Blue Force provided it with access to all of the BETA Property, as it was ordered to do.  As a result, Blue Force has illegally possessed, and may still be illegally possessing, the BETA Property, and it did so without the express or implied consent of BETA.

63.     On information and belief, Blue Force also instructed Mr. Wilson not to provide BETA with the BETA Property.

64.     Blue Force's possession of the BETA Property was, and may in part still be, to the exclusion of BETA.  Blue Force has exercised dominion and control over BETA's property without justification or excuse.  Moreover, notwithstanding the contractual terms

<center>38</center>

and the entry of the TRO and preliminary injunction, Blue Force continues to assert that it is entitled to possess and control the BETA Property to the exclusion of BETA. As the lawful owner, BETA is entitled to a permanent injunction requiring the immediate return of the BETA Property to BETA and a declaration that BETA is the lawful owner of the BETA Property and the only party entitled to own and control the BETA Property.

65. As the direct and proximate result of Blue Force's actions, BETA has suffered and will continue to suffer damages in an amount in excess of $75,000 to be proven at the trial of this matter.

## FIFTH COUNTERCLAIM
### (For Declaratory Judgment)

66. BETA realleges and incorporates herein by reference the preceding paragraphs of its Amended Counterclaims.

67. A declaratory judgment is cognizable and appropriate in this case under 28 U.S.C. §§ 2201-02 and the North Carolina Uniform Declaratory Judgment Act, N.C. Gen. Stat. §§ 1-253 to 1-267.

68. A real and justiciable controversy exists between BETA and Blue Force concerning whether Blue Force is obligated to provide the BETA Property to BETA; the parties' rights and obligations in connection with the right of first refusal language in the ALIA Contract; and whether BETA was entitled to terminate the ALIA Contract for convenience.

69. BETA seeks a declaration to construe the rights and obligations of the parties under the ALIA Contract and the Purchase Orders, including the declarations that:

39

i. BETA is the lawful owner of the BETA Property.

ii. Blue Force materially breached the ALIA Contract and the Purchase Orders by failing to return the BETA Property to BETA.

iii. Blue Force materially breached the ALIA Contract and the Purchase Orders by using BETA-Owned Information for its own purposes and benefit and by sharing BETA-Owned Information with third parties without BETA's authorization.

iv. BETA gave Blue Force the opportunity to exercise its right of first refusal under the ALIA Contract and Blue Force declined to exercise that right.

v. BETA was entitled to terminate the ALIA Contract for convenience and did terminate the ALIA Contract for convenience effective June 6, 2021.

vi. Blue Force has no further right of first refusal or any other expectation of special treatment by BETA in connection with the ALIA Contract or ALIA program.

## SIXTH COUNTERCLAIM
### (Unfair or Deceptive Trade Practices)

70.    BETA realleges and incorporates herein by reference the preceding paragraphs of its Amended Counterclaims.

71.    Blue Force's conduct as set forth herein is unfair and/or deceptive within the meaning of N.C. Gen. Stat. § 75-1.1.  Such conduct includes, among other things,

i. Unlawfully withholding and refusing to provide access to the BETA Property, to the exclusion of BETA, maliciously and in bad faith to create

40

settlement leverage against BETA in connection with this action and

sabotage BETA's ALIA Program;

ii. Unlawfully using BETA-Owned Information for its own purposes and

benefit, without BETA's authorization, in connection with its work for

Electra and otherwise; and

iii. Unlawfully sharing and disclosing BETA's Proprietary Information to

third parties and competitors of BETA, including Electra, Alaka'i

Technologies, Joby Aviation, and Archer Aviation, all without BETA's

authorization.

72.    Blue Force's unfair and/or deceptive conduct was and is occurring in, and

affecting, commerce.

73.    Blue Force's unfair and/or deceptive conduct has proximately caused actual

damages to BETA in an amount exceeding $75,000.

74.    BETA is entitled to recover treble damages from Blue Force under N.C. Gen.

Stat. § 75-16.

75.    Blue Force's unfair and/or deceptive conduct was willful and without

justification, entitling BETA to recover its reasonable attorneys' fees from Blue Force

under N.C. Gen. Stat. § 75-16.1.

## JURY DEMAND

BETA demand a trial by jury of all claims or issues so triable.

## PRAYER FOR RELIEF

41

WHEREFORE, BETA requests that the Court:

1.      Enter judgment against Blue Force for breach of contract, breach of the covenant of good faith and fair dealing, conversion of the BETA Property, and unfair or deceptive trade practices.

2.      Enter a declaratory judgment in BETA's favor including the following declarations:

    i.  BETA is the lawful owner of the BETA Property.

    ii.  Blue Force materially breached the ALIA Contract and the Purchase Orders by failing to return the BETA Property to BETA

    iii.  Blue Force materially breached the ALIA Contract and the Purchase Orders by sharing BETA-Owned Information with third parties without BETA's authorization.

    iv.  BETA gave Blue Force the opportunity to exercise its right of first refusal under the ALIA Contract and Blue Force declined to exercise that right.

    v.  BETA was entitled to terminate the ALIA Contract for convenience and did terminate the ALIA Contract for convenience effective June 6, 2021.

    vi.  Blue Force has no further right of first refusal or any other expectation of special treatment by BETA in connection with the ALIA Contract or ALIA program.

3.      Based on the irreparable harm for which BETA has no adequate remedy at law, entry of a preliminary injunction, to be effective throughout the pendency of this

action, and a subsequent permanent injunction, enjoining Blue Force, its employees, agents officers, directors, and assigns, or others in privity therewith or under its control, and any and all persons acting by or unity the authority of Blue Force or in privity with it:

       i.   from using, distributing, publishing, and/or failing to protect the BETA-Owned Information; and

      ii.   from otherwise unfairly competing with BETA.

4.     Award compensatory damages to BETA for Blue Force's breach of contract and/or breach of the covenant of good faith and fair dealing, and unfair or deceptive practices;

5.     Award compensatory and punitive damages to BETA for Blue Force's conversion of the BETA Property;

6.     Award treble damages to BETA for Blue Force's unfair or deceptive trade practices;

7.     Award to BETA pre-judgment interest, post-judgment interests, the costs of this action, and any attorneys' fees recoverable under applicable law;

8.     Grant BETA any other relief that the Court deems just and proper.

## JURY DEMAND

BETA demands a trial by jury of all claims or issues so triable.

43

This the 17th day of August, 2021.

/s/ Christopher G. Smith
Christopher G. Smith
N.C. State Bar No. 22767
csmith@smithlaw.com
Isaac A. Linnartz
N.C. State Bar No. 39858
ilinnartz@smithlaw.com
David A. Pasley
N.C. State Bar No. 52332
dpasley@smithlaw.com
SMITH, ANDERSON, BLOUNT, DORSETT,
MITCHELL & JERNIGAN, L.L.P.
Post Office Box 2611
Raleigh, North Carolina 27602-2611
Telephone:  (919) 821-1220
Facsimile:  (919) 821-6800

*Attorneys for BETA Technologies, Inc.*

44

## VERIFICATION OF AMENDED COUNTERCLAIMS

I, Kyle Clark, am the founder and CEO of BETA Technologies, Inc., the Defendant and Counterclaim Plaintiff in the above-captioned action. I have read the factual allegations made in the Amended Counterclaims and have personal knowledge of those allegations, or knowledge based on BETA's business records, and I verify that the factual allegations in the Amended Counterclaims are true to the best of my knowledge, information, and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 17th, 2021

Kyle Clark

45

<u>**CERTIFICATE OF SERVICE**</u>

        I hereby certify that the foregoing document was electronically filed with the Clerk of Court using the CM/ECF System, which will send notification of such filing to all attorneys of record.

        This the 17th day of August, 2021.

<div style="margin-left:40%">

/s/ Christopher G. Smith
Christopher G. Smith
N.C. State Bar No. 22767
csmith@smithlaw.com
SMITH, ANDERSON, BLOUNT, DORSETT,
MITCHELL & JERNIGAN, L.L.P.
Post Office Box 2611
Raleigh, North Carolina 27602-2611
Telephone: (919) 821-1220
Facsimile: (919) 821-6800

*Attorneys for BETA Technologies, Inc.*

</div>

46