# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### No. 1:21-cv-422-CCE-JLW

BLUE FORCE TECHNOLOGIES INC.,   )
        )
      Plaintiff/Counterclaim Defendant,   )
        )     **BETA'S MEMORANDUM**
      v.      )   **IN SUPPORT OF MOTION FOR**
        )     **PROTECTIVE ORDER**
BETA TECHNOLOGIES, INC.,   )
        )
      Defendant/Counterclaim Plaintiff.   )
        )

## Table of Contents

FACTUAL BACKGROUND ............................................................................. 4

I.   Blue Force's original Complaint does not involve Nick Wilson. .............................. 4

II.  Blue Force's First Amended Complaint asserts an unfounded claim that BETA unlawfully solicited Mr. Wilson. ................................................................. 6

III. Blue Force refuses BETA's request to withdraw the contractually barred solicitation claim, causing BETA to send a Rule 11 Safe Harbor communication. 11

IV. On the last day of the Safe Harbor period, Blue Force raises an entirely new issue, unrelated to the solicitation claim, alleging that Mr. Wilson improperly accessed data before departing Blue Force, for which it has yet to produce support. ............ 12

V.  Blue Force escalates further REDACTED ................................................ 14

VI. With no evidence to support its allegations, Blue Force launches a fishing expedition with wildly overbroad subpoenas to Scout and Mr. Wilson seeking *access* to and inspection of their materials. ........................................................ 15

VII. Mr. Wilson's deposition, currently scheduled for December 16, must be postponed permitting Mr. Wilson REDACTED REDACTED ............................................................................. 16

LEGAL STANDARD ............................................................................. 17

ARGUMENT ............................................................................. 18

I.   BETA and Mr. Wilson should be protected from Blue Force's forensic deep-sea fishing expedition. ................................................................. 18

II.  BETA will be prejudiced if a protective order as to Mr. Wilson's deposition is not entered. ................................................................. 21

CONCLUSION ............................................................................................... 22

CERTIFICATE OF COMPLIANCE WITH LR 7.3(d)(1) ............................................ 24

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### No. 1:21-cv-422-CCE-JLW

| | | |
|---|---|---|
| BLUE FORCE TECHNOLOGIES INC., | ) | |
| | ) | |
| Plaintiff/Counterclaim Defendant, | ) | |
| | ) | **BETA'S MEMORANDUM** |
| v. | ) | **IN SUPPORT OF MOTION FOR** |
| | ) | **PROTECTIVE ORDER** |
| BETA TECHNOLOGIES, INC., | ) | |
| | ) | |
| Defendant/Counterclaim Plaintiff. | ) | |
| | ) | |

BETA Technologies, Inc. ("BETA") seeks the Court's protection from recent, troubling actions by Blue Force Technologies Inc. ("Blue Force") in this matter that are without factual foundation and involve a sequencing that may suggest an improper motive.

Blue Force has launched a fishing expedition seeking *access* to every electronic device and account of its former consultant and third-party to this litigation, Mr. Nick Wilson, who is now a BETA employee. REDACTED REDACTED REDACTED BETA asks for the Court's protection from this collateral conduct that could improperly prejudice BETA and to ensure that this case does not devolve into a collateral sideshow prejudicing a litigant and a third-party individual.

Over the course of this litigation Blue Force has: (i) alleged that BETA wrongfully solicited Mr. Wilson despite knowing that those accusations were false at the time they were made; (ii) continued to pursue its claim that BETA solicited Mr. Wilson despite executing a contract that expressly permits him to work for BETA, prompting a Rule 11

Safe Harbor communication to Blue Force; (iii) on the last day of the Safe Harbor period,

conjured up a concern that Mr. Wilson shared Blue Force's confidential information with

BETA, with the only supporting evidence being that Mr. Wilson had access to Blue Force

information which he was *required* to retain per a contract with Blue Force; (iv) then –

BETA has learned – recently REDACTED

REDACTED and (v) submitted kitchen-sink subpoenas seeking

*access* to all Mr. Wilson's and Scout Aerospace's electronic devices, accounts, and

essentially anything and everything that could have ever interacted with Blue Force's

systems or files.

These developments all come immediately on the heels of Mr. Wilson submitting a

declaration damaging to Blue Force in connection with the Rule 11 Safe Harbor submission

showing that Blue Force knew its allegations were improper.

BETA seeks an order protecting it and Mr. Wilson from the prejudice of holding

Mr. Wilson's deposition on December 16, 2022, prior to Mr. Wilson obtaining closure on

the REDACTED To keep the case focused on

the merits, BETA also seeks the Court's protection with respect to Blue Force's improper

attempt to initiate a case-within-a-case through the improper use of subpoenas in a massive

forensic fishing expedition.

## FACTUAL BACKGROUND

### I. Blue Force's original Complaint does not involve Nick Wilson.

Nick Wilson is an aerospace engineer who worked as a consultant to Blue Force for

4

years, including on the construction of the airframe structures for BETA's prototype ALIA aircraft. (Wilson Decl. ¶¶ 2, 4.)[1] While Mr. Wilson was consulting for Blue Force as a contractor when Blue Force filed its Complaint against BETA on May 26, 2021, he had nothing to do with the lawsuit at that time. Mr. Wilson was not mentioned in the Complaint, he was not involved in the conduct or occurrences that formed the basis of Blue Force's claims, and he continued to work for Blue Force for many months after Blue Force filed its lawsuit. (*See generally* D.E. 1; Wilson Decl. ¶¶ 12–13.)

In late June 2021, BETA was attempting to recover certain intellectual property that it owned, and that it urgently needed to safely flight test its experimental ALIA aircraft (the "BETA Property"), but that Blue Force was wrongly withholding. (Wilson Decl. ¶ 6; D.E. 14-2.) On June 24, 2021, BETA's CEO, Kyle Clark, emailed Shawn Herrmann, Peter Buzzard, and Scott Bledsoe, who are all Blue Force officers and employees, as well as Mr. Wilson, requesting the BETA Property. (D.E. 14-2 at 6; Wilson Decl. ¶ 6; D.E. 15-1 ¶ 14.) Blue Force refused Mr. Clark's request. (D.E. 15-1 ¶ 15.)

Given the urgency, Mr. Clark then called and emailed Mr. Wilson separately on June 30, 2021, to ask for the BETA Property. (Wilson Decl. ¶ 7; Ex. 2.) Mr. Wilson refused to provide anything to BETA. (Fourth Clark Decl. ¶ 4; Sixth Churchill Decl. ¶ 4.)[2] In order

---

[1] Mr. Wilson's Declaration, attached as Exhibit 1, was prepared in connection with the Rule 11 Safe Harbor communication, before REDACTED

REDACTED

[2] The Fourth Declaration of Kyle Clark is attached as Exhibit 3 and the (continued . . .)

to continue safe operations of its experimental aircraft, BETA then sought emergency equitable relief from Judge Eagles, which the Court treated as a request for a mandatory injunction and granted. (D.E. 25.) Yielding to the inevitable, i.e., that the BETA Property belongs to BETA, Blue Force consented to converting the order into a preliminary injunction (D.E. 29). BETA later was granted final declaratory judgment confirming its ownership of the BETA Property and that it should not have been withheld by Blue Force. (D.E. 65 at 4.)[3]

## II. Blue Force's First Amended Complaint asserts an unfounded claim that BETA unlawfully solicited Mr. Wilson.

On July 27, 2021, Blue Force filed its First Amended Complaint, adding allegations that BETA unlawfully solicited Mr. Wilson.[4] (D.E. 32.) Specifically, Blue Force alleged that "[o]n information and belief, BETA has solicited Blue Force consultants, including Nick Wilson, to work directly for BETA in breach of the non-solicitation clause of the ALIA Phase I Contract," and asserted that BETA's alleged conduct also amounted to both an unfair and deceptive trade practice and tortious interference with contract. (*Id.* ¶¶ 48, 89, 105.)

---

Sixth Declaration of Dr. David Churchill is attached as Exhibit 4.

[3] The Declaratory Judgment Relief declares that BETA owns all the BETA Property through November 30, 2021, the earliest date of allegation of breach by Blue Force. (D.E. 65 at 4.)

[4] On the same day that the First Amended Complaint was filed (D.E. 32), Blue Force's initial counsel, who did not sign the First Amended Complaint, withdrew from representing Blue Force. (D.E. 30.)

The solicitation claim was unfounded when it was brought. Almost one month before the First Amended Complaint was filed, Mr. Wilson told Blue Force's president Scott Bledsoe that no one at BETA had ever solicited or attempted to solicit him to work for BETA. (Wilson Decl. ¶ 8.) Mr. Wilson was not consulted by Blue Force prior to filing the First Amended Complaint and, after he learned that the First Amended Complaint had been filed, he reiterated to Scott Bledsoe that he had not been solicited. (*Id.* ¶ 10.) Following that, on July 30, 2021, Scott Bledsoe forwarded Mr. Wilson a previous email between counsel for the Parties as the supposed basis for his concern and allegations regarding solicitation. (*Id.* ¶ 11.) The email is the asserted basis and headwaters for all this, and it provides nothing. (*See* Ex. 5 at 2.) The relevant excerpt is a statement from counsel expressly recognizing BETA's contractual obligations:

> employee.  BETA has no interest in involving Mr. Wilson as a party in this matter, and would greatly prefer that he come to work for BETA at the appropriate time and under circumstances where BETA is in full compliance with its contractual obligations.  Given BETA's previous

(Ex. 6 at (emphasis added by Scott Bledsoe).) At that time, July 30, 2021, Mr. Wilson was still working for Blue Force. (*See* Wilson Decl. ¶ 12.) He continued to consult for Blue Force after the First Amended Complaint was filed, through the end of 2021. (*Id.*; Ex. 7.)

Further, Blue Force contracted away its right to prevent Mr. Wilson from working for BETA or any other company. On September 2, 2021, Blue Force entered into a Proprietary Information and Invention Agreement ("PIIA") with Mr. Wilson's consulting company, Scout Aerospace LLC ("Scout"), in which Blue Force agreed not to enforce *any*

restrictions in *any* contract that would limit Scout or Mr. Wilson's employment options. (Ex. 8 ¶ 19.) Blue Force expressly agreed not to enforce non-compete provisions applicable to Mr. Wilson and not to enforce non-solicitation provisions applicable to third parties who pursued Mr. Wilson. (*Id.*) The provision reads in full:

> Restrictive Third-Party Contracts. As used herein the term "Third-Party Restriction" means a provision in a contract between BFT (or any affiliate of BFT) and any third-party, which provision directly or indirectly prohibits Contractor or any individual who is an employee, member or director of Contractor, from engaging in discussions to be engaged or employed by such third-party, or in fact being engaged or employed by such third-party, or which prohibits such third-party from soliciting Contractor or any individual who is a an employee, member or director of Contractor for employment or engagement. BFT hereby agrees and covenants that: (i) it will not enforce such Third-Party Restriction, either against Contractor or against any individual who is an employee, member or director of Contractor, or against the third-party, in any such case as it applies to Contractor or any individual who is a [sic] an employee, member or director of Contractor; (ii) BFT will not sue or assert, or continue to sue or assert in a court of law, government agency, public or private tribunal, or arbitrator, any claim to enforce a Third-Party Restriction with respect to Contractor or any individual who is a an employee, member or director of Contractor; and (iii) such third-party shall be a third-party beneficiary of this Section 19 and such third-party beneficiary shall have the right to enforce this Section 19 as if it were a party to this Agreement.

(*Id.*)

Blue Force specifically negotiated to exempt BETA from Mr. Wilson's draft non-compete obligations. (*See* Ex. 9 at 6, ¶ 6.) Scott Bledsoe explained to Mr. Wilson that the origin of the draft clause was Scott Bledsoe's request to the drafting lawyer "to _allow_ you to be exempted from the non-solicit with respect to Beta." (Ex. 9 at 1.) The final language in the executed PIIA is even broader, relieving Mr. Wilson of any existing non-compete obligations and relieving all third parties, not just BETA, of any non-solicitation

8

obligations with respect to Mr. Wilson. (Ex. 8 ¶ 19.)

Ultimately, Mr. Wilson did come work for BETA, as Bledsoe expected and as the PIIA authorized. Specifically, following the execution of the PIIA, Mr. Wilson reached out to BETA to express his interest in joining BETA. (Wilson Decl. ¶ 13.) BETA shared this interest and, on December 9, 2021, sent Mr. Wilson an offer letter for him to become an employee of BETA. (Ex. 10 at 1–2.) Mr. Wilson signed this offer letter on the same day. (*Id.* at 2.) Mr. Wilson joined BETA as an employee on January 10, 2022. (Wilson Decl. ¶ 13.)

As a condition of Mr. Wilson's employment, BETA explicitly prohibited him from providing BETA with any "confidential, proprietary, or trade secret information of any of [his] prior employers or clients" and contractually required that he "must be extremely careful not to bring to Beta, to our systems, or to or property, even if inadvertently, any documents or other material in tangible form belonging to or acquired for an prior employer or clients." (Ex. 10 at 1–2.) BETA has not received any Blue Force documents or information from Mr. Wilson. (Fourth Clark Decl. ¶¶ 5–6; Sixth Churchill Decl. ¶ 5.)

There is another important agreement that is relevant to the background here and, which BETA suggests, raises further questions about Blue Force's conduct toward Mr. Wilson and Blue Force's creation of this new issue. Despite the PIIA providing a clear path for Mr. Wilson to work for whomever he wanted, upon learning that Mr. Wilson would no longer provide professional services to Blue Force after 2021, Blue Force threatened to sue Mr. Wilson regarding files in his possession. (Ex. 11; Ex. 12 at 1; *see* Ex. at 13 at 1.)

Blue Force demanded both that Mr. Wilson provide Blue Force with files in his possession and then, after delivering them to Blue Force, demanded that he permanently delete those files. (Ex. 11 at 1–2.).

Negotiations to resolve the dispute ensued, and Blue Force and Scout, entered into the Transfer Data Delivery Agreement ("TDDA") dated December 31, 2021. (Ex. 12; Ex. 14 (TDDA).)

Under the TDDA, Scout was to provide Blue Force with a copy of all Blue Force files in its possession. Scout was permitted to retain an archival copy of all files delivered to Blue Force (the "Archive Drive"), with the one caveat that it was required to delete all files relating to a specific Blue Force customer from the Archive Drive after Blue Force confirmed receipt of those files. (Ex. 14 ¶¶ 1, 5.)

Per the TDDA, on January 7, 2022, Mr. Wilson provided Blue Force with two copies of all Blue Force files that were in Scout's possession. (Ex. 15.) As required by the TDDA, Mr. Wilson (as Scout's President) also kept the Archive Drive. (*See* Ex. 16 at 1–2.) After Mr. Wilson delivered the files to Blue Force, he deleted the specific project files from the Archive Drive as requested by Blue Force. (Ex. 15.)

The TDDA separately required Scout to retain an Archive Drive for a period of at least a year because Scout was required, upon request from Blue Force, to provide Blue Force with a replacement copy of the files in question if needed. (Ex. 14 ¶ 6.) Critically, and in light of the litigation previously threatened by Blue Force, the TDDA provided a full release making it explicit that Mr. Wilson and Scout could not be held liable for any

damages arising from the performance of the TDDA, from the files, or for any of the services provided to Blue Force by Scout or Mr. Wilson. (*Id.* ¶ 4.)

### III. Blue Force refuses BETA's request to withdraw the contractually barred solicitation claim, causing BETA to send a Rule 11 Safe Harbor communication.

Returning to the improper allegations of solicitation by Blue Force, on June 24, 2022, counsel for BETA wrote to counsel for Blue Force requesting that Blue Force withdraw its allegations that BETA unlawfully solicited Mr. Wilson and dismiss its related claims. (Ex. 17.) The letter explained that Mr. Wilson had made it clear to Blue Force, on multiple occasions, that no one at BETA ever solicited him to join BETA. (*Id.* at 2.) The letter further explained that these allegations and claims must be dismissed from the case because Blue Force, through the PIIA, had contracted away its right to enforce any third-party restriction that may have been applicable to Mr. Wilson or Scout. (*Id.*) Blue Force declined to withdraw any of its claims or allegations with respect to Mr. Wilson, despite the PIIA and Blue Force's explicit desire "to _allow_ [him] to be exempted from the non-solicit with respect to Beta." (Ex. 9 at 1; Ex. 18.)

On August 12, 2022, counsel for BETA sent counsel for Blue Force a Rule 11 Safe Harbor provisional filing, with a cover note expressing regret at this step and hoping that the improper solicitation allegations would be withdrawn mooting the issue. (Ex. 19.) This letter also stated that, per Federal Rule Civil Procedure 11, Blue Force had 21 days (until September 2) to withdraw the relevant allegations and claims before BETA filed the motion for sanctions. (*Id.*) The Rule 11 Safe Harbor provisional filing included Mr. Wilson's

11

Declaration, which revealed that Blue Force made the solicitation claims despite being told it had not occurred and despite the PIIA.

**IV. On the last day of the Safe Harbor period, Blue Force raises an entirely new issue, unrelated to the solicitation claim, alleging that Mr. Wilson improperly accessed data before departing Blue Force, for which it has yet to produce support.**

Rather than dismiss the solicitation claim, and despite the fully negotiated release in the TDDA, on the last day of the Safe-Harbor period, Blue Force introduced a new set of far-reaching allegations that Mr. Wilson "surreptitiously gathered and copied vast quantities of highly sensitive Blue Force information prior to tendering his resignation." (Ex. 20 at 2.) Blue Force stated that it had engaged a "forensic investigator to independently explore and document Wilson's data breach" and that it would supplement its responses to BETA's prior discovery requests to address this new issue. (*Id.* at 2–7, 9–10.)

At that point, this action had been pending for over 15 months and Mr. Wilson had not worked for Blue Force in over 8 months. Despite the suspicious timing, BETA delayed filing its Rule 11 motion so it could conduct discovery to understand the basis for these new allegations regarding Mr. Wilson's handling of Blue Force information. (Ex. 21 at 2–4.) Discovery has not yielded any support for Blue Force's new allegations, and BETA accordingly is seeking the Court's protection as Blue Force now seeks to pursue an unfounded fishing expedition.

The discovery on this new issue raised by Blue Force consisted of recent depositions

12

of Brian Bledsoe (November 17, 2022)[5] and Russell Gilmore (November 18, 2022),[6] the two individuals involved in Blue Force's recent forensic investigation of Mr. Wilson's access to data systems. (Ex. 24 at 3.) Despite the fact that Mr. Wilson's data possession and access was explicitly addressed by the TDDA, neither had seen the TDDA prior to their depositions, nor were they aware of its terms. (Bledsoe Dep. 61:20–62:16; Gilmore Dep. 14:23–15:21.) Brian Bledsoe is a contract technology consultant for Blue Force and the brother of its CEO, Scott Bledsoe. (Brian Bledsoe Dep. 9:19–25, 14:1–13).) He is not a Blue Force employee. (*Id.* 10:10.) Russell Gilmore is the independent forensic investigator that Blue Force engaged to review some of Mr. Wilson's access to Blue Force's systems. (Gilmore Dep. 10:21–11:16.) Blue Force contacted Gilmore about this matter *after* BETA served its Rule 11 Safe Harbor correspondence. (Gilmore Dep. 10:9–19.) Bledsoe's review also occurred after Blue Force received the Rule 11 Safe Harbor correspondence. (*See* Brian Bledsoe Dep. 45:4–47:5.)

Both Brian Bledsoe and Mr. Gilmore testified that they had not reviewed any evidence showing that Mr. Wilson shared any Blue Force information with any third party, though they, of course, also testified that it would be impossible to *definitively* say that had not occurred without access to *every* computer device and account Mr. Wilson has ever touched. (Brian Bledsoe Dep. 127:12–130:2; Gilmore Dep. 99:2–101:10.) Brian Bledsoe

---

[5] Excerpts from the transcript of the deposition of Brian Bledsoe are attached as Exhibit 22.

[6] Excerpts from the transcript of the deposition of Mr. Gilmore are attached as Exhibit 23.

also testified that Mr. Wilson had been given access by Blue Force to all of the data at issue. (Brian Bledsoe Dep. 36:16–38:3 (testifying that Wilson necessarily was granted access to the data); 155:2 – 6 (testifying "yes" that Mr. Wilson had access from Blue Force to the information on the hard drive); *see generally id.* at 154:1 – 155:6.)

In sum, Blue Force has no evidence that Mr. Wilson acted improperly; no evidence that he transmitted any data to third parties nor acted inconsistently with his obligations under the TDDA; BETA's contract with Mr. Wilson prohibited him from transferring data to BETA; and BETA has sworn under oath that it has not received any Blue Force information from Mr. Wilson or Scout.

## V. Blue Force escalates further REDACTED

Despite having no evidence that Mr. Wilson had improperly accessed or shared Blue Force's confidential information, Blue Force REDACTED

REDACTED

**REDACTED**

For the Court's convenience, a timeline of the material events just described is attached as Exhibit 25, with the supporting record citations.

**VI.    With no evidence to support its allegations, Blue Force launches a fishing expedition with wildly overbroad subpoenas to Scout and Mr. Wilson seeking *access* to and inspection of their materials.**

On November 30, Blue Force gave notice of extraordinary subpoenas to Mr. Wilson and Scout, with a response date of December 12.[7] (Ex. 26.)   The noticed subpoenas seek *access* to: (i) *all devices* Mr. Wilson used between January 1, 2021 through January 31, 2022 to access any Blue Force system; (ii) *all devices* Mr. Wilson used to access the Google account for a Blue Force email address that Mr. Wilson was provided by Blue Force; (iii) *all storage medium* (hard drives, usb drives, etc.) that ever stored the information contained on the hard drives delivered to Blue Force by Mr. Wilson on January 7, 2022, per the

---

[7] Blue Force also issued a similar subpoena to Aerospace Exploration Enterprises Corp. ("AXE").  AXE is an entity that BETA purchased from Mr. Wilson. The subpoena to AXE is not at issue in this motion. BETA has objected to the fishing expedition subpoena, but has also responded in full that it does not possess any responsive devices or accounts.

TDDA and a list of all storage medium that ever contained those files that are not currently in Mr. Wilson's possession; (iv) *access to every cloud storage account* that ever stored the information contained on the hard drives delivered to Blue Force by Mr. Wilson on January 7, 2022; (v) *every device* in Mr. Wilson's possession that ever had a file synchronization tool installed on it and was connected to any Blue Force system; and (vi) *access to all email accounts* used by Mr. Wilson between January 1, 2021 and January 31, 2022, with the exception of the email address that was provided to him by Blue Force. (*Id.*)

**VII. Mr. Wilson's deposition, currently scheduled for December 16, must be postponed permitting Mr. Wilson** REDACTED REDACTED

By agreement of the parties, REDACTED

REDACTED Mr. Wilson's deposition was agreed and then scheduled for December 16, 2022. Blue Force has issued a subpoena to Mr. Wilson for that date. (Ex. 27). Given the development of Blue Force REDACTED REDACTED it would not be appropriate to hold his deposition on that date.

Blue Force has indicated that it will postpone Mr. Wilson's deposition pending the outcome of the motion to quash his deposition subpoena. But Blue Force does not agree that BETA itself is entitled to a protective order. While the outcome of Mr. Wilson's motion to quash may fully protect BETA, REDACTED

REDACTED

REDACTED

16



As such, while BETA seeks ultimately to have Mr. Wilson testify, it would only

be appropriate for the deposition of Mr. Wilson to occur after 

Accordingly, BETA brings this motion.

<u>**LEGAL STANDARD**</u>

Under Rule 26(c)(1) of the Federal Rules of Civil Procedure, a "party or any person

from whom discovery is sought may move for a protective order in the court where the



action is pending" and the court may "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c)(1). Any subpoena that seeks evidence "that is . . . so overbroad that compliance with its demands will necessarily require production of irrelevant evidence, seeks evidence outside the scope of Rule 26(b)(1)" and "[s]uch a subpoena creates an undue burden because it necessarily imposes greater hardship than is necessary to obtain proper discovery." *In re Subpoenas for Documents Issued to ThompsonMcMullan, P.C.*, No. CV 3:16-MC-1, 2016 WL 1071016, at *5 (E.D. Va. Mar. 17, 2016). This Court has been clear that subpoenas (seeking documents or a deposition) that represent a party's intent to engage in a "deep-sea fishing expedition" and "satellite litigation" are not in line with the rules and that parties, and third parties, can be protected from such subpoenas through the entry of a protective order. *Jiangmen Kinwai Furniture Decoration Co. v. IHFC Properties, LLC*, No. 1:14-CV-689, 2015 WL 5098791, at *5-7 (M.D.N.C. Aug. 31, 2015).

## <u>ARGUMENT</u>

**I. BETA and Mr. Wilson should be protected from Blue Force's forensic deep-sea fishing expedition.**

The sequence and timing of Blue Force's shifting and unfounded allegations with respect to Mr. Wilson create real concern.

Blue Force's initial Complaint made no reference to Mr. Wilson and did not include any allegations that BETA had solicited any Blue Force contractors. (D.E. 1.) After Mr. Wilson had directly told Scott Bledsoe that no one at BETA had ever solicited him to join BETA, Blue Force filed its First Amended Complaint, adding its allegations that BETA

18

wrongfully solicited Mr. Wilson.  (D.E. 32; Wilson Decl. ¶¶ 6–8.)

After BETA confirmed that Blue Force had contracted away any restrictions that may have once been applicable to Scout or Mr. Wilson working for others, BETA requested that Blue Force withdraw its claims and allegations with respect to Mr. Wilson. (Ex. 17.)   When Blue Force refused, BETA submitted its Rule 11 Safe Harbor communication to Blue Force for failing to withdraw these claims and informed Blue Force of the 21-day safe harbor period.  (Ex. 19.)  The Rule 11 Safe Harbor submission to Blue Force included Mr. Wilson's Declaration showing that Blue Force was aware its allegations were unfounded.  (*See* Wilson Decl. ¶ 3.)

On the last day of the Safe Harbor period, Blue Force informed BETA of its concerns about Mr. Wilson's access of Blue Force's systems and its belief that Mr. Wilson improperly shared confidential Blue Force data with BETA.  (Ex. 20 at 2.)  While Blue Force has been in possession of the TDDA files since *January 7, 2022*, (Ex. 26 at 7), deposition testimony of Mr. Gilmore, Blue Force's forensic analyst, confirms that his involvement in this matter only began after Blue Force received BETA's motion for sanctions, which included Mr. Wilson's damaging declaration.  (Gilmore Dep. 10:12–16.) Further, the files at issue were provided to Blue Force in connection with the TDDA, which waived all liability relating to the files delivered, and which *requires* Mr. Wilson to maintain possession of the files in Archive Drive form for a period of at least a year.  (Ex. 14.)  Deposition testimony of Mr. Gilmore and Brian Bledsoe further confirm that, despite having conducted a forensic investigation, Blue Force has *no evidence* that Mr. Wilson

19

shared any of the files contained on the Archive Drive – to which he had access as a Blue Force consultant – with any third party. (Brian Bledsoe Dep. 128:23–130:2 (Bledsoe); Gilmore Dep. at 99:2–101:10.)

Blue Force's contention *now* that Mr. Wilson shared files from the Archive Drive with BETA is pure rank speculation. To that end, Blue Force now seeks to gain *access* to all devices, cloud storage accounts, storage medium, and email accounts used by Mr. Wilson and Scout—who are not parties to this litigation. Blue Force hopes to gain access to every device or account that Mr. Wilson ever used to interact with Blue Force's systems or to store Blue Force's data to show that Mr. Wilson *must have* shared Blue Force's confidential information with BETA. But, Blue Force has absolutely no evidence that Mr. Wilson ever shared Blue Force confidential information with BETA. The reason for this is simple—Mr. Wilson did not share any Blue Force confidential information with BETA. (Fourth Clark Decl. ¶¶ 5–6; Sixth Churchill Decl. ¶ 5.) This is discovery in search of a claim, not discovery relevant to a claim that has been pled in good faith, consistent with Rule 11.

Blue Force's hoped-for license by subpoena to pursue a collateral issue, requiring Mr. Wilson and Scout to allow inspection of all devices and accounts has already necessitated BETA's full attention. This satellite gamesmanship already is imposing undue burden, expense, and annoyance on BETA (and its employee Mr. Wilson). It is improper. *See Jiangmen Kinwai Furniture Decoration Co.*, 2015 WL 5098791, at *5–7 (granting a motion for a protective order protecting third parties from subpoenas because the

20

"significant burden required for production and the resources required to deal with the likely satellite litigation . . . [was] completely out of proportion to any tangential relevance the documents might have"). As such, BETA requests that the Court enter an order stating that Scout and Mr. Wilson have no obligation to respond to Blue Force's recent subpoenas.

## II. BETA will be prejudiced if a protective order as to Mr. Wilson's deposition is not entered.

BETA is concerned that Blue Force's REDACTED

REDACTED

Blue Force's recent focus on Mr. Wilson's (authorized) access of its systems and unsupported allegations that Mr. Wilson shared Blue Force information with BETA suggest that these topics will be raised at his deposition. BETA believes that Mr. Wilson's testimony will be helpful to it, REDACTED

REDACTED

21



### <u>CONCLUSION</u>

For these reasons, BETA respectfully moves the Court to enter an order stating that Mr. Wilson and Scout need not respond to Blue Force's November 30, 2022, subpoenas and that BETA is protected from having to elicit Mr. Wilson's testimony until REDACTED

REDACTED

This the 12th day of December, 2022.

/s/ Christopher G. Smith
Christopher G. Smith
N.C. State Bar No. 22767
csmith@smithlaw.com
Isaac A. Linnartz
N.C. State Bar No. 39858
ilinnartz@smithlaw.com
David A. Pasley
N.C. State Bar No. 52332
dpasley@smithlaw.com
SMITH, ANDERSON, BLOUNT, DORSETT,
MITCHELL & JERNIGAN, L.L.P.
Post Office Box 2611
Raleigh, North Carolina 27602-2611
Telephone: (919) 821-1220
Facsimile: (919) 821-6800

*Attorneys for BETA Technologies, Inc.*

BAKER HOSTETLER

Jacqueline T. Menk
G.A. State Bar No. 728365
jmenk@bakerlaw.com
1170 Peachtree Street NE 2400
Atlanta, GA 30309
Telephone: (404) 946-9776
Facsimile: (404) 456-5734

23

## <u>CERTIFICATE OF COMPLIANCE WITH LR 7.3(d)(1)</u>

I certify that this Memorandum of Law in Support of BETA Technologies, Inc.'s Motion for Protective Order complies with Local Rule 7.3(d)(1) and does not exceed 6,250 words.

This the 12th day of December, 2022.

/s/ Christopher G. Smith
Christopher G. Smith
N.C. State Bar No. 22767
csmith@smithlaw.com
SMITH, ANDERSON, BLOUNT, DORSETT,
MITCHELL & JERNIGAN, L.L.P.
Post Office Box 2611
Raleigh, North Carolina 27602-2611
Telephone: (919) 821-1220
Facsimile: (919) 821-6800

*Attorneys for BETA Technologies, Inc.*

24

## CERTIFICATE OF SERVICE

I certify that this document was electronically filed with the Clerk of Court using

the CM/ECF System, which will send notification of such filing to all attorneys of record.

This the 12th day of December, 2022.

/s/ Christopher G. Smith
Christopher G. Smith
N.C. State Bar No. 22767
csmith@smithlaw.com
SMITH, ANDERSON, BLOUNT, DORSETT,
MITCHELL & JERNIGAN, L.L.P.
Post Office Box 2611
Raleigh, North Carolina 27602-2611
Telephone: (919) 821-1220
Facsimile: (919) 821-6800

*Attorneys for BETA Technologies, Inc.*