**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
No. 1:21-cv-422-WO-JLW**

| | | |
|---|---|---|
| BLUE FORCE TECHNOLOGIES INC.<br><br>Plaintiff/Counterclaim Defendant,<br><br>v.<br><br>BETA TECHNOLOGIES, INC.<br><br>Defendant/Counterclaim Plaintiff. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **NON-PARTIES NICK WILSON'S AND SCOUT AEROSPACE, LLC'S REPLY IN SUPPORT OF THEIR MOTION TO QUASH BLUE FORCE TECHNOLOGIES, INC.'S SUBPOENAS**<br><br>**UNDER SEAL** |

Blue Force Technologies Inc. ("BFT") proposes exhaustive and invasive examinations of the entire contents of all devices, data, and correspondence of Nick Wilson and Scout Aerospace, LLC (collectively, "Non-Parties"), as well as the deposition of Mr. Wilson, in a misguided attempt to (i) disprove undisputed evidence that Non-Parties did not share BFT secrets with BETA and (ii) explore an unfounded theory [REDACTED] that has no bearing on this lawsuit.

The examinations BFT seeks would impose dramatic burdens on Non-Parties [REDACTED] [REDACTED]. BFT's request should be denied and its subpoenas quashed.

## UNDISPUTED FACTS[1]

### BFT's Misguided Trade Secret Misappropriation Claims

1. Mr. Wilson and Scout Aerospace, LLC are not parties to this lawsuit. DE 148 at 13.

2. Despite that fact, they have received and responded to four document subpoenas. DE 148 at 13-14. They have produced thousands of non-privileged documents in response to those subpoenas.[2] *Id.*

3. The current BFT subpoenas seek full access to Non-Parties' devices, data, and email. DE 148 at 14.

4. BFT contends a forensic examination of every device and account of Non-Parties is necessary "to determine with whom Wilson shared the information he improperly harvested from BFT's computer systems." DE 148 at 15.

[1] There are numerous misrepresentations of fact in BFT's Opposition. Non-Parties are eager to confront them all, [REDACTED] The undisputed facts, however, sufficiently support this motion.

[2] That Non-Parties produced documents in response to prior subpoenas [REDACTED] is no basis to infer bad faith. *Cf.* DE 148 at 3 (chastising Non-Parties for complying with "friendly subpoenas" issued by BETA).

5. To the contrary, all evidence refutes BFT's speculation and establishes that Non-Parties did not share BFT information with BETA or anyone else. DE 148 at 15.

a) On March 14, 2022, Mr. Wilson's prior counsel stated in a letter to BFT that Non-Parties had not shared BFT data with BETA or any third parties. DE 138-11 at 1.

b) On November 17, 2022, Brian Bledsoe, forensic consultant for BFT (and BFT CEO Scott Bledsoe's brother), testified at his deposition that he has seen "no direct evidence of Mr. Wilson transmitting any of this hard drive stuff to a third party," and that he "[has] seen nothing on the [BFT] system about [Mr. Wilson] providing [BFT] data from those systems to a third party." DE 143-22 at 128:10—130:07.

c) On November 18, 2022, Russell Gilmore, forensic expert for BFT, testified that he "did not see anything on [the hard drives]" that was evidence of communications with third parties. DE 143-23 at 100:19-101:01.

d) On December 9, 2022, BETA CEO Kyle Clark attested under penalty of perjury that "Mr. Wilson has not shared any confidential [BFT] documents or information with BETA, except to the extent that he has responded to subpoenas issued to him in this matter." DE 143-3 at 2.[3]

e) On December 9, 2022, BETA CTO David Churchill confirmed in a sworn declaration that Mr. Wilson did not share any BFT information with BETA. DE 143-4 at 2.

---

[3] BFT attempts to make an issue of Non-Parties' productions in response to BETA subpoenas. However, BETA's subpoenas to Non-Parties did not seek BFT's intellectual property. They sought, and Non-Parties' productions evidence, BFT sharing BETA intellectual property with third parties. *See* DE 139-6; DE 139-7.

6. If Mr. Wilson or Scout Aerospace had shared any BFT secrets with BETA, evidence would exist at BETA. *See* DE 139 at 13. Yet BFT has cited zero party discovery reflecting such sharing.

**BFT's Unfounded Claim of [redacted]**

7. As the party to any government contracts, BFT—not Mr. Wilson or Scout—bore any obligation to protect or preserve sensitive documents. DE 148-1 ¶ 30.

8. Whatever BFT now claims about whether Mr. Wilson's historical downloading of data was "authorized," BFT granted Mr. Wilson full access to the documents at issue. DE 148-4 (explaining Mr. Wilson "was provided a Razuna account," identifying Mr. Wilson's access credentials, describing downloading activity by Mr. Wilson in July of 2021, noting that Mr. Wilson "provided . . . copies of all BFT data on his systems per an agreement with BFT," and concluding that "these files . . . came from the Razuna server").

9. Mr. Wilson was not subject to any confidentiality obligations concerning projects he worked on for BFT. DE 139 at 7 (undisputed by BFT); *see also* DE 139-4 (Proprietary Information and Invention Agreement executed September 2, 2021, to address confidentiality concerns). Nevertheless, through counsel, he represented he did not share any BFT files with BETA or any third parties. DE 138-11 at 1.

10. Non-Parties returned the relevant documents to BFT, deleted the most sensitive files at BFT's request, and executed a contract with BFT that specifically authorized retention of an archive copy. DE 139-5; DE 139-11.

[redacted]

[redacted]

[redacted]

## ARGUMENT

### I. THE SUBPOENAS SHOULD BE QUASHED BECAUSE BFT HAS NO LEGITIMATE BASES FOR THEM.

BFT's opposition makes abundantly clear that its overreaching, burdensome document and deposition subpoenas are a last-ditch effort to disprove what everyone with knowledge has sworn or represented—Non-Parties did not share BFT secrets with BETA. BFT responds that it "does not have to take the word of Wilson, his counsel, or anyone else – it is entitled to take discovery to test the veracity of any such statements." DE 148 at 14.

BFT fails to acknowledge that it *did* have the opportunity to test the veracity of those statements through prior subpoenas to Non-Parties, which sought all "communications and related documents, in which [Scout or Mr. Wilson] sent any files from the archival copy of the Files to BETA, Spirit, Bombardier, or any other third party." DE 139-8; DE 139-9. No evidence of sharing was produced by Non-Parties, because none exists. DE 139 at 10.

BFT also had the opportunity to test BETA's denial of any sharing when it deposed BETA CEO Kyle Clark. Yet BFT obtained no evidence to refute Mr. Clark's sworn declaration—as reflected by the glaring lack of such evidence in the transcript excerpts BFT attached to its opposition. DE 148-2. BFT has conducted party discovery, obtained documents from Non-Parties in response to prior subpoenas, and deposed BETA's CEO, Chief Technology Officer, and

Rule 30(b)(6) designee on the topic and found nothing. BFT should not be permitted to fill hypothetical gaps in discovery through unduly burdensome document and deposition subpoenas to non-parties. *See Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019) (A non-party's status requires an "even more demanding and sensitive inquiry than the one governing discovery generally." (internal quotations and citation omitted)).

Nevertheless, BFT's document subpoenas seek access to the full contents of every desktop, laptop, phone, tablet, cloud storage account, and email account used by Non-Parties. DE 139-1; DE 139-2. If we assume *arguendo* that Non-Parties together have just one device/account in each category sought by the subpoenas[4] and that each device contains the average data typically stored on such devices, BFT seeks over 1.8 *terabytes* of information from Non-Parties.[5]

---

4 [redacted]

5 *See* https://lifehacker.com/how-much-storage-space-do-you-need-in-your-computer-5726339 (desktop computer preferred storage: 512 GB); https://www.netbooknews.com/tips/how-much-storage-space-do-i-need/ (laptop computer average storage: 256 GB); https://www.androidauthority.com/average-smartphone-storage-1213428/ (cell phone average storage: 118.3 GB); https://iosfuzhu.com/is-128gb-enough-for-a-tablet/#:~:text=How%20much%20storage%20does%20a%20tablet%20have%3F%20The,models%20with%20larger%20storage%20capacities%20in%20the%20future (tablet average storage: 124 GB); https://blog.pcloud.com/stacks-of-storage/#:~:text=The%20average%20person%20stores%20500GB%20of%20data%20in,equivalent%20t

Using BFT's preferred measure for absurdly large volumes of electronic data printed onto physical sheets of paper, DE 148 at 9, that would be almost as tall as ***four*** Mount Kilimanjaros placed one on top of another.[6]

No affidavit is needed to demonstrate how excessive and expensive such a production would be. Requiring Non-Parties to produce that volume of data solely to disprove sworn statements in furtherance of a theory lacking any shred of evidence would be inappropriate, unreasonable, and unduly burdensome.

To the extent a basis for BFT's document and deposition subpoenas is its unfounded theory of [redacted] [redacted], such discovery is irrelevant and should be denied. *See* Fed. R. Civ. P. 26(b).

o%20137%2C237%20photos%20for%20just%20one%20person%21 (cloud account average storage: 500 GB); https://www.lifewire.com/what-is-the-average-size-of-an-email-message-1171208#:~:text=Still%2C%20popular%20email%20providers%20have%20different%20size%20limits%2C, with%2015%20GB%20of%20email%20storage.%20More%20items (email account average storage: 313.75 GB).

[6] *See* Paulette Keheley, *How Many Pages in A Gigabyte? A Litigator's Guide,* www.digitalwarroom.com/blog/how-many-pages-in-a-gigabyte (last visited January 5, 2023) (estimating that 1.824 terabytes would be equivalent to more than 1.2 billion pages of printed text, or about 182,400,000 emails).

## II. THE SUBPOENAS SHOULD BE QUASHED ███████

[remainder of page redacted]

Case 1:21-cv-00422-WO-JLW Document 167 Filed 01/10/23 Page 12 of 17

14

Case 1:21-cv-00422-WO-JLW   Document 167   Filed 01/10/23   Page 14 of 17



**CONCLUSION**

For the reasons articulated above and in Non-Parties' Motion to Quash, Non-Parties respectfully request the Court to grant their Motion to Quash BFT Subpoenas.

This the 10th day of January, 2023.

/s/ Tanisha Palvia
Kearns Davis
N.C. State Bar No. 22014
Daniel Adams
N.C. State Bar No. 51806
Tanisha Palvia
N.C. State Bar No. 43117
BROOKS, PIERCE, MCLENDON
 HUMPHREY & LEONARD, L.L.P.
P. O. Box 26000
Greensboro, NC 27420-6000
(336) 271-3174
(336) 232-9174 (fax)

*Attorneys for Non-Parties Nick Wilson and Scout Aerospace, LLC*

**CERTIFICATE OF WORD COUNT**

I, Tanisha Palvia, hereby certify that this memorandum in support of the motion to quash complies with Local Rule 7.3(d) and does not exceed 3,125 words.

This the 10th day of January, 2023.

/s/ Tanisha Palvia
Tanisha Palvia