# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### No. 1:21-cv-422-WO-JLW

| | | |
|---|---|---|
| BLUE FORCE TECHNOLOGIES INC., | ) | |
| | ) | |
| Plaintiff/Counterclaim Defendant, | ) | |
| | ) | **BETA'S RESPONSE** |
| v. | ) | **IN OPPOSITION TO** |
| | ) | **BLUE FORCE'S MOTION** |
| BETA TECHNOLOGIES, INC., | ) | **FOR RECONSIDERATION** |
| | ) | |
| Defendant/Counterclaim Plaintiff. | ) | |
| | ) | |

Reconsideration is disfavored in the Fourth Circuit for good reason. Parties and courts invest substantial time and resources arguing and resolving legal questions, and once they are decided, a court should not accept a party's invitation to revisit its decision absent some compelling circumstance—*newly* discovered evidence, a change in *controlling* law, or some other *clear* error or *manifest* injustice. Time and again courts have warned parties against using reconsideration to raise new arguments that were previously available or to rehash old ones because a party was displeased with the outcome.

BFT did not heed these warnings. After thorough briefing and the Court's issuance of a 50-page Memorandum Opinion and Order (the "Order") granting BETA partial summary judgment on certain issues related to the parties' contract (the "Contract"), BFT now requests reconsideration of two of this Court's holdings: (1) that BFT has no ongoing rights under the provision "allowing Blue Force to purchase aircraft from BETA for resale to the United States Government" (D.E. 215 at 8) (the "Federal Sales Provision") and (2)

that the implied covenant of good faith and fair dealing does not apply to the Contract's termination-for-convenience provision.

But BFT cites no new evidence. It cites no change in controlling caselaw. Its arguments reveal no error in the Court's rulings, much less a clear one. Instead, BFT has done precisely what courts say litigants should not do. It advances a wholly new argument on the survival of the Federal Sales Provision. It rehashes old arguments on the applicability of the implied covenant by relying on "post-briefing" decisions that could have been brought to the Court's attention before ruling but were not, and which in any event only restate and apply decades-old legal principles. It invites the Court down an unworkable procedural path (1) requiring reconsideration in hopes of (2) obtaining vacatur of the Order to then (3) seek certification to the Delaware Supreme Court of a question that the Court already decided based on long-standing Delaware contract principles. And looming over this procedural morass is the reality that the Court's original analysis is correct. The motion should be denied.

## STANDARD OF REVIEW

Although district courts are authorized to reconsider their interlocutory decisions at any time before final judgment under Rule 54(b), *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514–15 (4th Cir. 2003), "allowing litigants a 'second bite at the apple' via a motion to reconsider is disfavored," *Nadendla v. WakeMed*, 24 F.4th 299, 304 (4th Cir. 2022). "Public policy favors an end to litigation and recognizes that efficient operation requires the avoidance of re-arguing questions that have already been decided." *Akeva,*

2

*L.L.C. v. Adidas America, Inc.*, 385 F. Supp. 2d 559, 565 (M.D.N.C. 2005). Thus, "while Rule 54(b) 'gives a district court discretion to revisit earlier rulings in the same case,' such discretion is 'subject to the caveat that where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.'" *U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Va., LLC*, 899 F.3d 236, 256–57 (4th Cir. 2018) (quoting *Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) (quotation omitted)).

For this reason, "[m]ost courts have adhered to a fairly narrow set of grounds on which to reconsider their interlocutory orders and opinions." *Akeva*, 385 F. Supp. 2d at 565; *accord White v. City of Greensboro*, 586 F. Supp. 3d 466, 481 (M.D.N.C. 2022). Using Rule 59(e) standards as their guide, courts generally will "only reconsider interlocutory rulings under Rule 54(b) when (1) there has been an intervening change in controlling law, (2) new evidence becomes available, or (3) the earlier decision was based on a clear error of law or would result in a manifest injustice." *White*, 586 F. Supp. 3d at 481. Clear error occurs where the court is "left with the definite and firm conviction that a mistake has been committed." *Reddy v. Buttar*, 38 F.4th 393, 401 (4th Cir. 2022). A manifest injustice is "an error by the court that is direct, obvious, and observable," *Lewis v. Hoke Cnty.*, No. 1:17CV987, 2022 WL 292928, at *2 (M.D.N.C. Feb. 1, 2022), a definition which "mimics the definition of clear error." *United States v. Duke Energy Corp.*, No. 1:00CV1262, 2014 WL 4659479, at *5 (M.D.N.C. Sept. 17, 2014).

Consistent with the narrow grounds for granting reconsideration, "a motion to

3

reconsider an interlocutory order should not be used to rehash arguments the court has already considered merely because the movant is displeased with the outcome. Nor should such a motion be used to raise new arguments or evidence that could have been raised previously." *South Carolina v. United States*, 232 F. Supp. 3d 785, 793 (D.S.C. 2017) (internal citations omitted); *accord White*, 586 F. Supp. 3d at 466 (motion to reconsider "does not serve as a vehicle for a party to raise new arguments or legal theories that could have been raised before the judgment").

## ARGUMENT

### I.    The Court should deny reconsideration of its holding that the Federal Sales Provision failed to survive termination.

BFT first requests that the Court reconsider its holding that the Federal Sales Provision did not survive BETA's termination for convenience because there was no survival language. (D.E. 238 at 4–7.) The gist of BFT's argument is that the Federal Sales Provision includes "its own separate and independent termination provision" that sets a future expiration date on BFT's contractual rights at a time when the Phase I Contract would otherwise have already terminated. (D.E. 238 at 5.) According to BFT, this "independent" expiration date allowed the Federal Sales Provision to survive BETA's termination for convenience. (*Id.* at 5–6.) BFT's only basis for seeking reconsideration on this question is that the Court's survivability holding is clearly erroneous. (*Id.* at 6–7.) It cites no new caselaw or evidence.

The Court should reject reconsideration for at least two reasons. *First*, BFT had the chance to make this argument, but never did. Attempting to assert a new argument for the

4

first time on reconsideration is grounds alone for denial. *Second*, even setting aside BFT's procedural failures, its argument fails on the merits. The Court correctly concluded that the Federal Sales Provision lacks a survival clause, and Delaware caselaw cited by the Court in its Order directly rejects BFT's new theory that an expiration date doubles as a survival clause.

### A. BFT cannot assert the Federal Sales Provision argument for the first time on reconsideration.

The Court can dispense with the Federal Sales Provision survival argument for a simple reason: BFT is attempting through reconsideration to advance an argument it never raised in its original briefing. Courts routinely hold that this is prohibited. *E.g.*, *Madison River Mgmt. Co. v. Bus. Mgmt. Software Corp.*, 402 F. Supp. 2d 617, 619 (M.D.N.C. 2005) ("[A] reconsideration motion is not to present a better or more compelling argument that the party could have presented in the original briefs."); *accord Liberty Ins. Underwriters, Inc. v. Beaufurn, LLC*, No. 1:16CV1377, 2020 WL 3086034, at *6 & n.9 (M.D.N.C. June 10, 2020) (collecting cases); *see also Pac. Ins. Co. v. Am. Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) (collecting cases) ("Rule 59(e) motions may not be used, however, to raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance."); *Regan v. City of Charleston, S.C.*, 40 F. Supp. 3d 698, 702 (D.S.C. 2014) (a party's failure to address arguments in initial briefing is "a strategic decision for which the plaintiffs bear responsibility" (cleaned up)).

BFT never before argued what it is now arguing—that the Federal Sales Provision

survived BETA's termination for convenience based on the presence of a "separate and independent" time-based termination clause. (D.E. 238 at 5.) In fact, after BETA asserted that the Federal Sales Provision did not survive termination, BFT did not respond to this point, and BETA asserted on reply that BFT's failure to respond was a concession. (D.E. 101 at 12.) BFT took no action to advance or preserve the argument thereafter, such as requesting to file an amended brief or a surreply.

BFT knows this but does not own up to its litigation choices. Instead, to deflect responsibility for never making this argument, BFT tries to blame *BETA* for a purported "failure to correctly frame the issue in its motion" and vaguely suggests BETA somehow acted improperly by "never disclos[ing] to the Court the facts necessary for the Court to determine whether or not termination had occurred." (D.E. 238 at 6.) But BETA has hidden nothing. BETA's position and the material facts have been the same all along: Because the Federal Sales Provision lacked an express survival clause, BETA's termination for convenience terminated any rights under the Federal Sales Provision. To the extent BFT disagreed with BETA's "framing" of the issue, what facts were material, or the relevance of the cases BETA cited, BFT was welcome to bring its views to the Court's attention. It never did. The Court should reject its attempt to do so now for the first time.

## B. The Court did not err or cause manifest injustice in deciding that the Federal Sales Provision did not survive termination.

The Court should also reject BFT's request because the Court's original analysis on the termination of the Federal Sales Provision was correct. There is no legal error or manifest injustice.

6

As the Court held, while other provisions of the Contract included express survival clauses, the Federal Sales Provision did not, and therefore did not survive BETA's termination for convenience. (D.E. 215 at 45–46 (citing First Am. Compl. (D.E. 32)).) "Had the parties wished for [this] provision[] to survive termination," the Court concluded, "they would have provided for that in the Contract." (*Id.* at 46.) This analysis is well supported in the caselaw—including the case the Court cited in the Order. (*Id.* (citing *GRT, Inc. v. Marathon GTF Tech., Ltd.*, No. 5571-CS, 2012 WL 2356489, at *5 (Del. Ch. June 21, 2012))); *see also Aveanna Healthcare, LLC v. Epic/Freedom, LLC*, No. CVN20C08055AMLCCLD, 2021 WL 3235739, at *27 & n. 263 (Del. Super. Ct. July 29, 2021) (collecting cases and noting that courts "routinely find" that the exclusion of certain language in a contract, where the parties "clearly knew how to" include the language at issue, is "intentional and a byproduct of negotiation").

Faced with this reality, BFT now attempts to supply the missing survival clause by pointing to other language in the Federal Sales Provision. (D.E. 238 at 6.) The "independent" termination provision BFT now relies upon states that for purposes of the Federal Sales Provision, BFT's "exclusive right terminates on the third anniversary of receipt of aircraft certification (the 'Initial Period')." (D.E. 32-3 at 13.) Thus, according to BFT, its Federal Sales rights were not set to expire until some later date, and it is this expiration date which allowed the provision to survive notwithstanding BETA's termination for convenience. (D.E. 238 at 5–7.)

The problem with this argument is that it is directly rejected by the very case the

Court cited in its Order on survivability—*GRT, Inc. v. Marathon GTF Tech., Ltd.* In *GRT*, the plaintiff and defendant were both players in the biofuel technology industry. 2012 WL 2356489, at *1. The parties entered into a Development Agreement, which provided the plaintiff certain access rights to a Demonstration Facility that, at the time the parties entered their agreement, was under construction by the defendant. *Id.* The plaintiff planned to use the Demonstration Facility for certain technology testing, and under the provision relating to the plaintiff's rights to access and use the facility, its access rights were to "expire" on December 31, 2012. *Id.* The Development Agreement, however, did not contain any actual commitment by the defendant to operate the Demonstration Facility until a date certain or any representation that the Demonstration Facility would remain operational for any specific period. *Id.* at *3. The defendant ultimately shut down the Demonstration Facility in November 2009 because of operational difficulties before the plaintiff had asked to run any tests. *Id.* at *1.

The plaintiff sued, claiming that the defendant breached the contract by permanently discontinuing operations at the facility prior to December 31, 2012. *Id.* The "heart of [the plaintiff's] argument" was that the contract provided that its Access Rights were "to expire on December 31, 2012." *Id.* at *5. The plaintiff, the Delaware Chancery Court explained, "equates the term expiration with a guarantee that those Access Rights will for certain live until that date." *Id.* at *5.

The Chancery Court rejected this argument. *Id.* at *5–6. In doing so, the court distinguished between time-based language containing a date on which rights would expire

8

and a survival clause that allows a right to survive termination of the Contract:

> [A] statement that contractual rights expire on a certain date is **no guarantee** that they will survive until that date **if there are contractually contemplated circumstances that would terminate them sooner**. Rather, a statement that rights will expire on a certain date acts to set a maximum life span for those rights. Although [the plaintiff] would interpret an expiration date provision as the mirror image of a survival clause, to say that a right *survives* until a certain date creates a contractual obligation through the duration of that entire period. By contrast, an expiration date **does not preclude other circumstances contemplated by the contract from shortening that period.**

*Id.* at *5 (emphases added). The court went on to contrast the expiration language in the access-rights provision to other portions of the contract that included express survival language, concluding that the parties knew how to provide for survival and that the access-rights timing language was not equivalent to a survival clause. *Id.* Not surprisingly, when this Court conducted its own survival analysis in the Order, it cited *GRT*.

It is hard to see any difference between the present case and *GRT*, yet BFT makes no effort to address it. Just like in *GRT*, BFT claims that the presence of an expiration date in the Federal Sales Provision—the exclusive right "terminates on the third anniversary of receipt of aircraft certification"—means its exclusive sale rights were *guaranteed* through that date, regardless of *any* intervening events, including termination for convenience. But as the *GRT* court held, the presence of an expiration date is "no guarantee" that such rights will survive if there are other "contractually contemplated circumstances that would terminate them sooner." *Id.* at *5. Here, there were contractually contemplated circumstances that would terminate BFT's rights "sooner"—BETA had the right to terminate the Contract for convenience. (D.E. 215 at 45.) Moreover, as this Court held

originally, the fact that the parties included survival language elsewhere, but did not include any such language in the Federal Sales Provision, demonstrates that "when [the parties] wanted to provide for the survival of a right, they provided for the survival of that right." (*Id.* at 46 (quoting *GRT*, 2012 WL 2356489, at *5 (cleaned up)).)

In short, under Delaware law, an expiration date does not double as a survival clause. The Court's survival analysis contained no legal errors, clear or otherwise, and the Court should deny BFT's request for reconsideration.

## II. The Court should deny reconsideration of its holding that under Delaware law, the implied covenant of good faith and fair dealing does not limit BETA's Contract right to terminate for convenience.

BFT next requests that the Court reconsider its decision that under Delaware law, the implied covenant of good faith and fair dealing does not restrict BETA's authority to terminate for convenience. (D.E. 238 at 7–14.) BFT's argument is that two "post-briefing decisions"—*American Healthcare Administrative Services, Inc. v. Aizen*, 285 A.3d 461 (Del. Ch. Ct. 2022), and *Baldwin v. New Wood Resources LLC*, 283 A.3d 1099 (Del. 2022)—"cast[] doubt on this Court's interpretation of Delaware law." (D.E. 238 at 8.) According to BFT, these decisions suggest that the Court should have found that the termination-for-convenience clause is "discretionary" and, therefore, subject to the implied covenant. (*Id.* at 7–14.) BFT therefore requests that this Court grant its motion for reconsideration, vacate its Order, and certify the question of whether the implied covenant applies to termination-for-convenience clauses to the Delaware Supreme Court. (*Id.* at 14.)

Much like BFT's request for reconsideration on the Federal Sales Provision, the

10

Court should reject this request on both procedural grounds and on the merits. The cases BFT relies upon are not new, one is not even a Delaware Supreme Court decision, BFT could have earlier brought them to the Court's attention, and BFT is largely trying to rehash arguments the Court already rejected. In any event, the cases BFT now cites do not suggest any error in the Court's original analysis, but instead confirm that it is correct.

A. **BFT's "post-briefing" cases do not constitute intervening changes in controlling law.**

To the extent that BFT references *American Healthcare* and *Baldwin* as "post-briefing" cases to suggest that these cases are newly decided or represent an intervening change in controlling law, BFT is incorrect.

Both decisions were decided well before the Court issued its Order in this case and are therefore not "intervening." Specifically, the Delaware Supreme Court decided *Baldwin* on August 16, 2022, *see* 283 A.3d 1099, and the Delaware Chancery Court decided *American Healthcare* on November 18, 2022, *see* 285 A.3d at 461—months before this Court's March 29, 2023 Order. (D.E. 215.) BFT could have filed an addendum to its Response suggesting *American Healthcare* or *Baldwin* as subsequently decided authority "at any time prior to the Court's ruling." LR 7.3(i). It did not do so. BFT is therefore once again inviting the Court to reconsider based on information that BFT failed to properly raise when it could have.

Furthermore, neither *American Healthcare* nor *Baldwin* represent "changes" in "controlling" law. As an initial matter, neither case involves a termination for convenience provision. Instead, BFT cites *American Healthcare* for the well-worn principle that "the

11

implied covenant of good faith and fair dealing restrains a party's exercise of discretion under an agreement" and that this rule "operates with special force when a contract confers discretion on a party." (D.E. 238 at 9 (emphases omitted).) A simple review of *American Healthcare* indicates that these principles are anything but new under Delaware law. The Delaware Chancery Court cites no fewer than four separate Delaware decisions setting forth identical principles of law and dating as far back as the mid-1980s. *See Am. Healthcare*, 285 A.3d at 479–80 (citing *Glaxo Grp. Ltd. v. DRIT LP*, 248 A.3d 911, 920 (Del. 2021); *Gilbert v. El Paso Co.*, 490 A.2d 1050, 1055 (Del. Ch. 1984), *aff'd*, 575 A.2d 1131 (Del. 1990); *Miller v. HCP Trumpet Invs., LLC*, 194 A.3d 908, 2018 WL 4600818, at \*1 (Del. Sept. 20, 2018); *CC Fin. LLC v. Wireless Props., LLC*, C.A. No. 5927-VCN, 2012 WL 4862337, at \*5 (Del. Ch. Ct. Oct. 1, 2012).)

The same goes for *Baldwin*. BFT cites *Baldwin* for the principle that where a party to a contract "is given discretion in determining whether a condition in fact has occurred," "a possible gap" exists which Delaware courts will fill with the requirement that the party "must use good faith in making that determination." (D.E. 238 at 13.) Once again, a review of *Baldwin* reveals that these principles are by no means new. In fact, the language which BFT primarily quotes from *Baldwin*, (D.E. 238 at 13), is itself a direct quote from a separate, 26-year-old Delaware Chancery Court opinion and reflects principles from several other cases decided well before this dispute arose. *See Baldwin*, 283 A.3d at 1116 & n.97 (quoting *Wilmington Leasing, Inc. v. Parrish Leasing Co., L.P.*, No. 15202, 1996 WL 560190, at \*2 (Del. Ch. Sept. 25, 1996) and citing *Gilbert*, 490 A.2d at 1055; *Glaxo*

12

*Grp.*, 248 A.3d at 920; *Oxbow Carbon & Minerals Holdings, Inc. v. Crestview-Oxbow Acquisition, LLC*, 202 A.3d 482, 503–04 (Del. 2019); *CC Fin. LLC*, 2012 WL 4862337, at *4; *Airborne Health, Inc. v. Squid Soap, LP*, 984 A.2d 126, 146–47 & n.1 (Del Ch. 2009)). BFT's citation to *Baldwin* for the proposition that Delaware courts fill gaps with the implied covenant is also nothing new. *See Baldwin*, 283 A.3d at 1116 & n.98 (citing *Dieckman v. Regency GP LP*, 155 A.3d 358, 367 (Del. 2017)).

Because *American Healthcare* and *Baldwin* merely recite long-standing principles of Delaware law, BFT cannot resuscitate its failed legal argument under the guise that those cases previously were unavailable or represent a change in the law. The Court should instead reject this attempt by BFT to rehash the good-faith-and-fair-dealing arguments the Court has already decided.

> **B.** **The Court did not err or cause manifest injustice by determining that the implied covenant of good faith and fair dealing does not apply to the termination-for-convenience provision.**

Because *American Healthcare* and *Baldwin* do not represent intervening changes in controlling law, BFT is left to argue that these cases demonstrate that the Court committed clear error in determining that the implied covenant does not apply to the termination-for-convenience provision here, resulting in manifest injustice to BFT. (D.E. 238 at 10, 14.) But in doing so, BFT misreads both this Court's analysis and the legal analysis in governing Delaware cases.

While there is no Delaware case directly addressing the implied covenant of good faith in the specific setting of a termination-for-convenience clause, (D.E. 215 at 27 & n.3),

13

that is of little moment to the ordinary application of Delaware contract principles, which was the central feature of this Court's analysis. As this Court held, Delaware law makes clear that the "implied covenant 'cannot be invoked when the contract itself expressly covers the subject at issue.'" (*Id*. at 37 (quoting *Nationwide Emerging Mgrs, LLC v. Northpointe Holdings, LLC*, 112 A.3d 878 (Del. 2015)).) Applying this principle to the facts and Contract here, the Court found that because other *express* provisions governed what BFT decried as "bad faith," the *implied* covenant of good faith should not be added to a termination-for-convenience provision that is silent on the subject. (D.E. 215 at 34–39.) To do so would allow BFT "to simultaneously claim" that BETA's conduct "is both an express breach of contract and a breach of the implied covenant of good faith," which Delaware law does not allow. (*Id.* at 38–39.)

Similarly, relying on well-established principles of Delaware law, (*id.* at 39–40), the Court emphasized that the parties knew how to use the term "good faith" when they wanted it to apply:

> The Contract uses the phrase "good faith" three times but omits it in the termination for convenience provision. (See FAC (Doc. 32) at 42, 51–52, 54.) If the parties had wished to impose a good faith requirement on termination for convenience, they would have done so. To read in a good faith obligation that Plaintiff failed to negotiate for itself would defeat the plain meaning of the Contract.

(*Id.* at 40.)

Consequently, the Court concluded that if BETA violated the express provisions governing its conduct, BFT might have a claim for breach of those provisions, but BETA's *termination rights* were not restricted in any way by an *implied* covenant. (D.E. 215 at 38–

14

39.) And although the termination provision certainly allowed BETA to decide whether and when to exercise its termination rights, these unrestricted termination rights were intended by the parties to give BETA "substantial leeway in terminating for convenience," and not to be limited by an implied covenant when the parties clearly knew how to impose a good-faith obligation expressly. (D.E. 215 at 39 n.6; *see id.* at 21–40.) In short, there was no "gap" for the implied covenant to fill.

Having had its arguments to the contrary rejected the first time, BFT now attempts to manufacture a "gap" in the Contract by focusing on BETA's "discretion." Specifically, BFT claims that the termination-for-convenience clause creates a "discretionary" right subject to the implied covenant. (D.E. 238 at 10.) According to BFT, because the termination provision does not include a specific standard BETA must meet in exercising its termination right, there is a contractual "gap," and the implied covenant of good faith must apply to rein in BETA's discretion. (D.E. 238 at 13–14.)

BFT, however, misconstrues the relevant law. While it is certainly true that Delaware courts have applied the implied covenant to provisions that vest discretion in a party, both *American Healthcare* and *Baldwin* show that the implied covenant applies only when a gap exists in the contract with respect to the exercise of that discretion. *Am. Healthcare*, 285 A.3d at 478–79; *Baldwin*, 283 A.3d at 1116, 1118. BFT misreads these cases to suggest that whenever *any* provision vests a party with *any* discretion, there is *automatically* a "gap" in the Contract and the implied covenant applies. (*See, e.g.*, D.E. 238 at 10 ("Even if BETA had the discretionary right to terminate the Contract for cause

or no reason at all, Delaware law clearly restrains BETA's 'carte blanche' exercise of that discretion in bad faith.").

But in making this point, BFT is making a logical leap that is contradicted by well-established Delaware law. That law draws a distinction between contracts that expressly confer discretion on a party to, for example, decide whether a certain condition has occurred, versus contractual provisions vesting unrestricted authority to exercise contractual rights. In other words, there is a categorical difference between *unrestricted contractual rights* and contractual provisions that vest discretion in a party but *subject that discretion to substantive limits*.

The Delaware Supreme Court's recent decision in *Glaxo Group Limited v. DRIT LP*, 248 A.3d 911 (Del. 2021), is instructive on this point. There, two pharmaceutical companies with competing patent claims—GSK and Biogen—resolved their dispute by entering into a license and settlement agreement. *Id.* at 913. That settlement agreement allowed GSK to retain its patent and Biogen agreed to abandon its competing patent claim in exchange for royalty payments. *Id.* The settlement agreement explicitly stated that such royalty payments would not continue, however, if GSK "disclaimed" its patent. *Id.* at 914. GSK's right to disclaim its patent was set forth in the settlement agreement but contained no language restricting exercise of that right or expressly stating that the right was subject to GSK's "discretion." *Id.* Later, Biogen assigned the settlement agreement to another entity, DRIT. *Id.* at 913. After the assignment, GSK disclaimed its patent and stopped making royalty payments. *Id.* at 914. DRIT then argued that by disclaiming the patent,

16

GSK had breached the implied covenant of good faith and fair dealing. *Id.* Specifically, under its implied-covenant theory, DRIT contended that GSK's disclaimer right was "discretionary," and, therefore, had to be exercised in good faith. *Id.* at 918.

The Delaware Supreme Court acknowledged that the implied covenant applies to some discretionary provisions, but that it does not apply when the "discretionary" act follows from an unrestricted contractual right:

> [W]e disagree with the Superior Court's characterization of GSK's right to disclaim patents as a discretionary act that GSK had to exercise in good faith. It is one thing to imply a good faith obligation when the parties have *expressly agreed that a certain act is within a party's discretion*. It is another matter to imply discretion to restrict actions *expressly permitted by the parties' agreement*. The implied covenant imposes a good faith and fair dealing obligation when a contract confers discretion on a party. It should not be used to imply terms that modify or negate an ***unrestricted contractual right authorized by an agreement***.

*Id.* at 920-21 (citations omitted) (emphases added). Applying these principles, the Delaware Supreme Court concluded that the Agreement "gave GSK an unqualified right to disclaim the '092 Patent and end its royalty obligation," and that DRIT could "not use the implied covenant to vary the express terms of the Agreement." *Id.* at 921.

Such is the case here. There are no express good-faith limitations on BETA's termination rights under the termination-for-convenience provision. Rather, termination for convenience is an action "expressly permitted by the parties' agreement." *Id.* at 920. The implied covenant should therefore "not be used to imply terms that modify or negate" such an "unrestricted contractual right authorized by an agreement." *Id.* That GSK had some "discretion" as to whether and when to exercise its right to disclaim patents did not

17

suddenly create a "gap" in the contract requiring the application of the implied covenant. Likewise, that BETA had some "discretion" as to whether and when to exercise its unrestricted termination-for-convenience right does not create a gap in this Contract.

Because BFT ignores this distinction, its reliance on *American Healthcare* and *Baldwin* is misplaced. These two cases support, rather than undermine, the distinction between unrestricted contractual rights and "discretionary" provisions where a contractual gap is present.

In *American Healthcare*, a corporation—American Healthcare—sold assets to a buyer. *See* 285 A.3d at 469. The buyer placed a portion of the consideration in escrow to fund any purchase price adjustment and to secure indemnification obligations. *Id.* The purchase agreement appointed American Healthcare's former chief executive officer, Aizen, as American Healthcare's sellers' representative for purposes of making decisions about the escrowed funds. *Id.* A provision of the contract expressly provided Aizen with "sole and absolute discretion" to "do all things and to take all actions under or related to" the contract, including disbursement of the escrowed funds. *Id.* at 477. Nonetheless, as to the escrowed funds, the contract's provisions *mandated* that Aizen release those funds once certain conditions were met. *See id.* at 476–77. Aizen later refused to release the escrowed funds even though those conditions were satisfied, arguing that he could "exercise his discretionary authority to *override* the Escrow Release Provisions." *Id.* at 477 (emphasis added).

The Delaware Chancery Court rejected this argument, focusing its attention on the

18

gap between Aizen's discretionary authority and the provisions mandating release of the escrowed funds. *Id.* at 477–82 ("It would create an internal contradiction to read the Purchase Agreement as mandating that Aizen release the escrowed funds, while at the same time granting Aizen the authority to ignore that mandate."). This gap required application of the implied covenant of good faith and fair dealing to Aizen's exercise of discretion, in part because the court concluded that the parties had not addressed this tension between the express conferral of discretion and the use of discretion to avoid mandatory disbursement: "When applied to an exercise of discretion, [the implied covenant] means that the exercise of discretionary authority must fall within the range of what the parties would have agreed upon during the original negotiations, if they had thought to address the issue." *Id.* at 480. Thus, *American Healthcare* illustrates that the implied covenant will prevent the exercise of "discretion" in a manner inconsistent with mandatory provisions of the relevant agreement.

That is not this dispute. As the Court has recognized, the parties agreed to *express* provisions governing the very allegations of bad faith BFT now levels at BETA. Additionally, BETA is exercising its termination rights in a manner *consistent* with the Contract—which expressly authorizes termination for convenience with no substantive restrictions.

Similarly, *Baldwin* also illustrates the distinction between unrestricted contractual rights where there is no gap and discretionary rights where a gap is present. In that case, Baldwin served as the manager of an LLC, New Wood. *See* 283 A.3d at 1102. New Wood's

operating agreement provided that Baldwin had a right to indemnification for certain actions, subject to a *determination by New Wood* that Baldwin "acted in good faith and in a manner that [he] reasonably believed to be in or not opposed to the best interests of the Company." *Id.* at 1109.

After circumstances arose for which Baldwin claimed indemnification under the operating agreement, New Wood initially made indemnification payments to Baldwin. *Id.* at 1108–10. Thereafter, however, New Wood's owners determined that Baldwin had not acted in good faith in those circumstances, refused to indemnify Baldwin, and filed suit for breach of contract, attempting to claw back the earlier payments. *Id.* at 1109–10. Baldwin asserted that the implied covenant applied to the indemnification decision by the owners because the owners had acted in bad faith in making their determination as to whether Baldwin had acted reasonably. *Id.* at 1111.

Ultimately, the Delaware Supreme Court found that a "possible gap" existed in the contract between (1) the provision allowing the owners to make an indemnification determination and (2) the provision requiring that indemnification be provided to Baldwin "to the fullest extent permitted" under the governing statute if he "acted in good faith and in a manner that [he] reasonably believed to be in or not opposed to the best interests of the Company." *Id.* at 1118. Reciting that the implied covenant of good faith and fair dealing encompasses "the principle of contract construction that if one party is given discretion in determining *whether a condition in fact has occurred*, that party must use good faith in making that determination," *id.* at 1116 (alteration and quotations omitted) (emphasis

20

added), the court held that the implied covenant applied to the "*subjective discretionary determination* as to whether an indemnitee has met a specific standard of conduct." *Id.* at 1120 (emphasis added). The court also noted that if indemnification could be denied for any reason, it would render the specific standard of conduct by which Baldwin was to be measured "meaningless." *Id.* at 1120. Accordingly, the court held that the implied covenant applied. *Id.*

Here, there is no "subjective discretionary determination" that restricts BETA's termination rights and creates a "possible gap." BETA's right to terminate the agreement "for convenience" pertains to *its convenience*—not anyone else's. Furthermore, in *Baldwin*, the parties had negotiated for a specific standard of conduct to govern indemnification, and the implied covenant was necessary to give meaning to the provision. Here, by contrast, the parties already "bargained for a contractual term proscribing the conduct that allegedly violated the implied covenant." *Id.* at 1118 (quotation omitted). BFT, however, refuses to acknowledge that the parties did not negotiate to restrict BETA's right to terminate for convenience.

At bottom, the Delaware Supreme Court's jurisprudence firmly supports this Court's contractarian determination that the implied covenant does not apply to the termination-for-convenience clause here. Whatever substantive limits on BETA's conduct exist under the Contract existed *outside* the termination-for-convenience clause, putting this case squarely in line with *Glaxo* and its discussion of unrestricted contractual rights. *American Healthcare* and *Baldwin* do not change this analysis, but rather illustrate

Case 1:21-cv-00422-WO-JLW   Document 251   Filed 05/24/23   Page 21 of 26

Delaware's contractarian approach to the implied covenant, which was properly followed by this Court. As such, the Court's decision does not evince "the definite and firm conviction that a mistake has been committed," *Reddy*, 38 F.4th at 401, nor "an error by the court that is direct, obvious, and observable," *Lewis*, 2022 WL 292928, at *2. Indeed, the Court correctly decided the issue and there is no clear error or manifest injustice to justify BFT's motion for reconsideration.

### III. Reconsideration as a means to certification is inappropriate.

Lastly, BFT admits that its request for reconsideration on the implied-covenant holding is only a means to obtain certification of the already-decided question to the Delaware Supreme Court. (D.E. 238 at 7–8.) BFT, however, has not cited a single case where a district court granted reconsideration on the grounds that a question it had already decided should be certified to a state court. BETA has not located one either. The only case cited by BFT in this regard is largely inapposite. (D.E. 238 at 14 (citing *Henriquez-Disla v. Allstate Prop. & Cas. Ins. Co.*, No. 13-284, 2014 WL 3887750 (E.D. Pa. Aug. 7, 2014)). *Allstate* involved a discovery dispute and certification for an immediate interlocutory appeal, not to a state court. *Id.* at *1, 6. Moreover, vacatur was not a necessary condition to an appeal; the question certified for immediate appeal was a legal determination from the court's original order. *Id.* at *1–3, 6.

The byzantine order of operations that BFT now demands—reconsideration of an already-decided question, followed by vacatur to fulfill a condition precedent to certification—illustrates why *both* requests should be denied. *See Priority Auto Grp., Inc.*

*v. Ford Motor Co.*, No. 2:12cv492, 2013 WL 21556467, at *1 (E.D. Va. May 15, 2013) (denying certification of question to state court and noting that the court "cannot ignore" that certification motion "was filed more than six months after" a partial dispositive motion, that "[t]he parties and the court have already expended considerable effort resolving the very issues [plaintiff] seeks now to certify," that "certifying the questions at this stage would not save judicial time, energy, or resources," and that "certification would only unduly delay proceedings in this court").

## **CONCLUSION**

For the foregoing reasons, BETA respectfully requests that the Court deny BFT's motion for reconsideration.

[*Remainder of Page Left Intentionally Blank*]

This the 24th day of May, 2023.

/s/ Christopher G. Smith
Christopher G. Smith
N.C. State Bar No. 22767
csmith@smithlaw.com
Isaac A. Linnartz
N.C. State Bar No. 39858
ilinnartz@smithlaw.com
David A. Pasley
N.C. State Bar No. 52332
dpasley@smithlaw.com
SMITH, ANDERSON, BLOUNT, DORSETT,
MITCHELL & JERNIGAN, L.L.P.
Post Office Box 2611
Raleigh, North Carolina 27602-2611
Telephone: (919) 821-1220
Facsimile: (919) 821-6800

*Attorneys for BETA Technologies, Inc.*

BAKER HOSTETLER

Jacqueline T. Menk
G.A. State Bar No. 728365
jmenk@bakerlaw.com
1170 Peachtree Street NE 2400
Atlanta, GA 30309
Telephone: (404) 946-9776
Facsimile: (404) 456-5734

## <u>CERTIFICATE OF COMPLIANCE WITH LR 7.3(d)(1)</u>

I certify that this reply in support of BETA Technologies, Inc.'s Response in Opposition to Blue Force's Motion for Reconsideration complies with Local Rule 7.3(d)(1) and does not exceed 6,250 words.

This the 24th day of May, 2023.

/s/ Christopher G. Smith
Christopher G. Smith
N.C. State Bar No. 22767
csmith@smithlaw.com
SMITH, ANDERSON, BLOUNT, DORSETT,
MITCHELL & JERNIGAN, L.L.P.
Post Office Box 2611
Raleigh, North Carolina 27602-2611
Telephone: (919) 821-1220
Facsimile: (919) 821-6800

*Attorneys for BETA Technologies, Inc.*

## CERTIFICATE OF SERVICE

I certify that this document was electronically filed with the Clerk of Court using

the CM/ECF System, which will send notification of such filing to all attorneys of record.

This the 24th day of May, 2023.

/s/ Christopher G. Smith
Christopher G. Smith
N.C. State Bar No. 22767
csmith@smithlaw.com
SMITH, ANDERSON, BLOUNT, DORSETT,
MITCHELL & JERNIGAN, L.L.P.
Post Office Box 2611
Raleigh, North Carolina 27602-2611
Telephone: (919) 821-1220
Facsimile: (919) 821-6800

*Attorneys for BETA Technologies, Inc.*